WHALLON *against* KAUFFMAN.

THIS cause came before the Court on a bill of exceptions, taken to the opinion of the Judge at the trial.

On the 10th day of *December*, 1813, the defendant, for the consideration of 9,500 dollars, conveyed to the plaintiff several parcels of land, lying in the county of *Essex.* One of the tracts released and conveyed, and which gave rise to the present suit, was described in the following manner : "all and singular, the one equal undivided half part of that certain lot or tract of land, situate in the towns of *Willsborough* and *Essex*, in the county of *Essex*, called the *Conolly* patent; (the conveyance then sets out the courses and distances;) the said patent containing, by estimation, two thousand acres; excepting and reserving from said half part of said patent, certain parts thereof, sold by the former owner of the moiety, to *Joseph Stafford, John Hoffnagle*, and *John H. Morehouse;* said undivided moiety, over and above the reservations and exceptions aforesaid, containing, by estimation, *six hundred acres, and the same is hereby covenanted and warranted to contain, at least, five hundred acres.*"

The deed contained a special covenant, that, in case of an eviction of all or any part of the granted premises, the

The defendant, after granting a tract of land, described by metes and bounds, added, " containing, by estimation, 600 acres, and the same is hereby covenanted and warranted to contain at least 500 acres;" and then covenanted generally, that he was seised in fee simple, &c. and had full power to convey, &c. and for quiet enjoyment, and against incumbrances, &c. and warranty: *Held.* that the general covenants in the deed, were restrained by the special covenant, as to the quantity of land.

grantor should not only refund the whole or a proportionable part of the consideration money, but should pay the value of all such buildings as shall have been erected on the premises, lost by the eviction. The grantor then covenanted, that he was lawfully seized in fee simple of the premises granted, and had good right, full power, and lawful authority to sell and convey the same, *in manner and form aforesaid.* There were, also, covenants for quiet enjoyment, against incumbrances; and for further assurance, and a warranty.

The plaintiff, in his declaration, alleges as a breach, that the defendant was not, at the time, lawfully seised, nor had he good right, full power, and lawful authority, to sell in manner aforesaid.

At the trial, the defendant deduced a title to himself from the patentee, for the undivided half of the patent, (which contained, in the whole, 2,136 acres,) excepting as to 220 acres, which had been reserved by *William Gilliland,* the former proprietor of the whole patent, in his deed to *John Tayler,* dated the 27th of *August,* 1794, and the land excepted in his deed to the plaintiff, being 190 acres; he also proved, that a partition of the patent had been made by the plaintiff and *Daniel Ross,* by which it appeared, that the plaintiff received, on the division, exclusive of lots previously sold, 655 acres; that the plaintiff, after his purchase, in conjunction with the other proprietors, had sold, besides the land divided, three lots amounting to 170 acres, of which the plaintiff had 85 acres, making in the whole 740 acres of the *Conolly* patent which fell to the plaintiff's share, exclusive of about 20 acres, assigned to the plaintiff, on the partition, in consequence of the difference in quality.

The plaintiff then stated his claim to damages, for the half of the lots reserved in the deed from *Gilliland* to *Tayler,* and for the half of five other parcels which had been sold by the former proprietors, previous to the conveyance from the defendant to the plaintiff, making, in the whole, 270 acres.

The counsel for the defendant insisted, that the general covenant of seisin, in the deed from the defendant to the plaintiff, was restrained by the special covenant, to a warranty of 500 acres only; and inasmuch as it appeared that the

NEW-YORK,
May, 1821.

WHALLON
v.
KAUFFMAN.

plaintiff held undisputed 720 acres, the same was sufficient to bar the plaintiff's action. The judge decided, that this construction was erroneous, and that the plaintiff was entitled to recover for one half of all the lands which had been conveyed out of the *Conolly* patent, before the sale of the one half thereof to the plaintiff, excluding the parcels excepted in the defendant's deed. To this opinion the counsel for the defendant excepted. The jury found a verdict for the plaintiff, for 1,844 dollars and 46 cents, damages.

*Van Buren*, for the defendant. The intention of the parties to the deed, is to be carried into effect, as far as it can be ascertained. It is apparent from the language used, that the intention was to convey all the land belonging to the grantor in this patent, which had not been previously conveyed by him; but as the quantity was uncertain, they agreed to fix the extent of the covenants, or warranty, to a certain number of acres. In *Browning* v. *Wright*, (2 *Bos. & Pull.* 13.) it was held, that a general covenant in a deed, was restrained by a special covenant. An express covenant will limit and qualify any implied covenant in a deed arising from the words *give*, grant, &c. (*Frost* v. *Raymond*, 2 *Caines*, 188. 192. *Kent* v. *Welch*, 7 *Johns. Rep.* 258.) In *Cole* v. *Hawes*, (2 *Johns. Cases*, 203.) where the grantor covenanted generally, that he was well seised, &c., and had good right, and full power to convey, &c., and warranted the premises " against all claims and demands, except the lord of the soil;" it was held, that the covenants were to be construed together, and that the last restrained the first.

Admitting that the defendant is liable, the extent of the recovery can be no more than 158 acres.

*Henry*, contra. In all the tracts, the quantity of acres was uncertain, and the plaintiff was desirous to know how much land, at least, he had purchased; and the defendant, therefore, specified the number of acres. After covenanting, that the third tract, after the deductions and exceptions mentioned, should contain at least 500 acres, there is a special covenant, that in case of eviction from all or any part of the premises, the grantor should not only refund the

NEW-YORK,
May, 1821.

WHALLON
v.
KAUFFMAN.

purchase money, but should pay the value of the buildings erected on the premises from which the plaintiff might be evicted. In *Browning* v. *Wright*, and *Cole* v. *Hawes*, the covenants related to the *title*, not to the quantity of land. By warranting, that there should be 500 acres at least, the inference is, that there might be more, as was estimated; and if more, then the covenants were to extend to it. It was estimated that there were 600 acres. If he had covenanted for 500 acres only, without using the words, " at least," the covenant would have been confined to the quantity specified.

Again; the covenant applies to the whole premises, described by metes and bounds. Suppose the plaintiff had erected valuable mills, &c. on the premises, within the bounds described, and had, afterwards, been evicted by a paramount title, could the defendant, in an action brought against him on the covenant of seisin, say, " you have, besides the land on which your mills were erected, and from which you have been evicted, five hundred acres, and, therefore, you cannot recover against me."

WOODWORTH, J. The construction to be put on the covenants of seisin, and authority to convey, must be collected from a careful examination of the whole deed.

The cardinal point is, what was the intention of the parties, as derived from the deed itself? When that is discovered, it ought to be carried into effect, if it can be done consistently with the rules of law. If the words and provisions are doubtful, they are to be taken most strongly against the grantor. If they are susceptible of different constructions, the Court may take into consideration, the circumstances attending the transaction, the particular situation of the parties, and the state of the thing granted at the time of making the grant, for the purpose of ascertaining the probable intent.

It is the duty of the Court to give effect to every part of the deed, if the words made use of will admit of such construction; the covenant of seisin, and power to convey, must be satisfied, according to the fair import of the terms,

as collected from the whole context of the instrument. If it is not restrained or limited in its operation, it extends to the equal half of the patent, excepting the parcels previously sold to *Hoffnagle, Stafford,* and *Morehouse.*

The question here is, whether the covenant on which the action is founded, is general or special ; if the latter, the covenant of *seisin* and power to sell, will be construed not to extend beyond the quantity of 500 acres. The deed conveys several parcels of land, besides the *Conolly* patent. In every instance, the quantity is stated " *by estimation ;*" and then follows a covenant, that the parcel conveyed shall contain, at least, a certain number of acres, but less than the estimated quantity. Why was this done ? It appears to me that it was expressly to limit the extent of the defendant's responsibility. If this was not intended, the covenant is nugatory and useless ; but, if neither party knew how many acres were comprised within the boundaries described in the deed, and the defendant was willing to release his title to the land, be the quantity more or less ; but in the event of a defect of title, chose to restrict his liability to a certain number of acres ; and the plaintiff not knowing but that the land would fall short of the quantity estimated, and to guard against the risk, thought proper to protect himself, to a certain extent, then the reason of inserting these words, as well as the intent of the parties, is obvious. Supposing, in point of fact, that the undivided half, besides the parcels excepted, had, on a subsequent survey, been found to contain less than 500 acres, and this special covenant had been omitted, then, on failure of title, what would be the extent of the compensation which the plaintiff could claim under the general covenant of *seisin,* and power to convey ? Certainly, for the ascertained quantity only. But, with the special covenant contained in the deed, the plaintiff is authorized to say, true it is, that on the covenant of *seisin,* the defendant is not liable beyond the number of acres comprised within the boundaries, which are less than 500 acres, but there is a special covenant, by which he is bound to compensate for every acre less. I apprehend that such a claim could not be resisted ; and if so, it strongly illustrates the intent ; and shows that the special covenant was inserted to protect both parties, in certain con-

tingencies, and ought not to be lost sight of in determining, whether the covenant of *seisin* extends to more than a definite number of acres ; if it does, the Court must infer, that the grantor intended to give a limited and an unlimited warranty. The grantor says, that he is seised of, and in, all and singular, the above granted premises, and has good right, full power, and lawful authority to grant, bargain, sell and convey the same, *in manner and form aforesaid.* The covenant of *seisin*, and power to convey, are synonimous. The grantor covenants *in manner and form aforesaid*, which limits this covenant to the 500 acres, warranted in the special covenant : this qualifies the covenant of *seisin* and power to convey, and makes it a special, not a general covenant ; it gives effect to the intention of the parties, as collected from a view of the whole instrument.

In the case of *Browning* v. *Wright and others*, (2 *Bos.* & *Pull.* 13.) the principle established fully supports the construction I have adopted. In that case, *Wright*, after granting certain premises to *Browning*, and warranting the same against himself and his heirs, covenanted, that notwithstanding any act by him done, he was seised of the premises in fee, and that *he had good right, full power, and lawful authority* to convey ; it was held, that the general words, " *full power and lawful authority to convey*," were qualified by the special covenants against the acts of himself and his heirs. The reasoning of Lord *Eldon* in that case, removes the impression I entertained at the trial. His lordship observes, " What would be the use of any of the other covenants, if this were general ? It would be of little service to the grantor, to insist that the warranty, and the covenants for quiet enjoyment and further assurance, were specially confined to himself and his heirs, if the grantee were at liberty to say, ' I cannot sue upon these covenants, but I have a cause of action arising upon a general covenant, which supersedes them all.' " He further observes, " the true meaning of the covenant is, that the grantor has power to convey and assure, according to the terms used, to which terms he refers by the words, ' *in manner aforesaid.* ' "

Mr. Justice *Buller* observes, " the grantor has told us in one part of the deed, that he means to covenant against his

own acts, and are we to say, that he has, in the same breath, covenanted against the acts of all the world?" This would be highly inconsistent. The same question may be put in this case; the grantor informs us, that there shall be, at least, 500 acres; and we are now called upon to say, that the covenant of seisin extends to a greater quantity: that the grantor might stipulate in this manner, if he thought proper, no one will deny; but that he has not so covenanted in the present deed, is very evident to my mind.

The cases at common law referred to in *Browning* v. *Wright* and others, support that decision; and in *Tilden* v. *Studley*, (*Finch's Rep.* 90.) the Court of Chancery acted upon the same principle. There the deed contained a general covenant of lawful power to convey, but all the other covenants had restrictive words, and the grantee having sued the grantor on the general covenant, the Court of Chancery restrained him from proceeding. Lord *Eldon*, referring to that case, says, " this must have been done on the ground of the intent of the parties appearing on the instrument; since that intent could only be collected from the instrument itself, and not from any thing *dehors*."

This principle is also agreeable to a rule of the civil law, that if the words of a covenant appear to be contrary to the intention of the covenantors, which, from other parts of the instrument, is evident, such intention must be favoured rather than the words. (1 *Domat.* 39.)

In *Cole* v. *Hawes*, (2 *Johns. Cases*, 203.) the plaintiff declared on a covenant of seisin, and power to sell. It appeared that the deed contained a further covenant, to warrant and defend the premises against all claims, except the lord of the soil; the Court say, the last covenant explains the first, and in construing them, both must be taken together; that the exception was manifestly intended to apply to both covenants, and that the spirit of the agreement, and good sense, as well as justice, required such a construction.

The covenants of seisin and power to sell, are, in both cases, the same; but in the case cited, the Court limit and restrict the operation, not because the covenant was not general in its terms, but because the covenant of warranty was special, and showed the intent of the parties, that it was not

to extend to the lord of the soil. The intent is equally evident in the present case, for the covenant of warranty is limited to 500 acres ; and justice, as well as the sound rules of construction, require that the general covenant should be qualified accordingly.

So, also, in *Jackson v. Stephens*, (16 *Johns. Rep.* 110.) this principle of construction is sanctioned by the Court ; the Chief Justice says, " when there is a particular recital in a deed, and then general words follow, the general words shall be qualified by the particular recital."

After an attentive examination of authorities, and applying the settled rules of construction to the deed in question, I am satisfied, that the parties intended that the defendant should not be liable, provided there was a perfect title to 500 acres, and that the deed plainly indicates such intent. This result disposes of the plaintiff's claim to damages; and, if correct, renders an examination of the remaining exceptions unnecessary; but as this case may be carried to another tribunal, it is proper to decide on them. The defendant offered to prove, at the trial, that the several lots for which compensation was claimed, had, for several years before the sale to the plaintiff, been possessed and improved by the persons to whom they had been conveyed, claiming them as their own, under title derived from the proprietors of the *Conolly* patent, and were so possessed, when the plaintiff viewed the premises previous to the purchase.

This testimony was properly overruled, for although parol testimony may, in some cases, be admissible to aid the construction of a deed, so far as to prove the state of facts actually existing at the time of the conveyance, and a knowledge of them by the parties, the evidence offered could not aid in giving a construction ; for the circumstance, that a part of the lands were possessed, was no evidence that the grantor had not a right to convey, although the plaintiff knew (which does not appear) that the possessors claimed them as their own, and that the deed would include such possessions ; but a more conclusive reason for rejecting the testimony is, that the construction adopted is evident from the words of the deed. They imply a limited and special covenant of seisin merely.

The defendant, also, insisted, that the amount claimed for the deficiency in quantity, was incorrect, admitting that the plaintiff was entitled to recover; that it did not exceed 175 acres. The judge delivered his opinion, that the plaintiff was entitled to recover for 270 acres, estimated at 1,844 dollars 46 cents, for which sum a verdict was taken.

The number of acres deficient, was a question of fact to be submitted to the jury. The opinion of the judge was erroneous. There was conflicting evidence on this point, and the jury ought to have been directed to pass upon it. If the whole patent contained 2,136 acres, as *Stowers* testified, the one half would be 1,068; deducting from this half 720 acres, which the plaintiff has obtained, and 190 acres for the lots excepted in the defendant's deed, it follows, that the deficiency is only 158 acres. But on the part of the plaintiff, it appeared, that there had been conveyed out of the patent, before the purchase by the plaintiff, over and above the lands divided, and those excepted, 540 acres; for the one half of which, being 270 acres, the plaintiff claimed compensation. Estimating the several parcels of land conveyed and divided, they exceed 2,136 acres, as will appear on calculation. *Gilliland,* in his deed to *Tayler,* reserved 220 acres; there were excepted in the defendant's deed 190; 1,267 acres were divided; 170 were sold by the plaintiff and other proprietors before partition; and 320 acres sold by *Ross* and others before the plaintiff purchased; to which may be added, 20 acres assigned to the plaintiff, in consequence of the difference in quality; these several parcels amount to 2,187 acres, of which the one half is 1,093. The lands excepted by the deed, and those obtained by the plaintiff, are 910 acres, which leaves a deficiency of 183 only, so that, in either case, the opinion expressed to the jury was incorrect. They ought to have been directed to determine from the evidence, how much the patent contained; and that after deducting from the one half the lands excepted, and those obtained by the plaintiff, he was entitled to compensation for the residue.

I am of opinion that this exception is also well taken, and that a new trial ought to be granted, with costs to abide the event of the suit.

SPENCER, Ch. J. In *Browning* v. *Wright,* (2 *Bos. &*
*Pull.* 26.) *Buller,* Justice, observed, that in the construction
of agreements and covenants, the intention of the parties is
principally to be attended to, and that we do not do justice
to the parties, unless we look to the whole deed, and infer
from that, their real intention. " Covenants," he says, " be-
ing intended for the benefit of the party conveying, let us
see how this defendant has protected himself." The other
judges, and particularly Lord *Eldon,* expressed themselves
to the same effect. In that case, where there was a general
covenant, that the grantor was seised in fee of the premises,
and had full power to convey, the Court held that the in-
tervening general words were either part of the preceding
special covenant, or, if not, that they were qualified by the
special covenants against the acts of the grantor and his
heirs. It does not appear to me necessary to cite all the
cases, in which the Courts have decided either that the co-
venants in the same deed were distinct and independent of
each other, or that the one qualified and restrained the
other. Serjeant *Williams,* in a note to *Gainsford* v. *Grif-*
*fith,* (1 *Saund.* 61.) after questioning the decision in that
case, very justly observes, that the chief object of Courts of
law, at present, is to discover the true meaning of the par-
ties, and to construe the covenants accordingly. Taking
this guide, let us see what the defendant meant to cove-
nant, and in what manner the plaintiff must have under-
stood the covenant under consideration. Judging from the
deed, it is perfectly clear, that neither of the parties knew
how much land had been conveyed to *Stafford, Hoffnagle*
and *Morehouse.* They knew that the whole patent con-
tained 2000 acres, by estimation ; and they believed that
the undivided moiety intended to be conveyed by the de-
fendant to the plaintiff, over and above the reservations and
exceptions, would be 600 acres ; and the defendant was
willing to warrant, and did covenant and warrant, that the
same contained, at least, 500 acres. We are called upon
to reject every part of this cautious stipulation, which both
parties must have perfectly understood, and fully assented
to ; and consider the defendant as covenanting that he was
seised in fee, and had full power to sell one moiety of the

patent, except what had been conveyed to *Stafford, Hoff-nagle* and *Morehouse*, without any reference to the actual extent of the conveyances to those persons, rejecting wholly the estimated quantity, which the moiety of the patent contained, over and above those exceptions and reservations, and the positive warranty that there would be 500 acres.

I am of opinion, that the names of the persons to whom sales and conveyances had been made by *Heiser*, was not of the essence of the exception and reservation ; and that this was controlled and restrained by the express covenant, that the moiety, independently of the exceptions, should contain 500 acres. This express covenant as to quantity, not affected by the exceptions, contains an implied negation to the defendant's warranting that there should be more than 500 acres, over and above the exceptions and reservations. The substance of the defendant's covenant is, " that whereas I understand that *Heiser* has sold to *Stafford, Hoffnagle* and *Morehouse*, certain tracts in this patent, though I know not how much, I judge that there will be 600 acres, which I can convey ; but of that I am not certain, yet I am willing to warrant, and do warrant, that there shall be 500 acres." With what pretence, then, can the plaintiff, who has already obtained under the defendant's deed, 740 acres, in this patent, claim compensation for 240 acres more, when the defendant refused to covenant that he should have, in all, more than 500 acres ? In my judgment, it is entirely immaterial, what quantity of land was conveyed to the three persons mentioned in the exception, provided there were 500 acres unconveyed ; and it is also immaterial, that there had been conveyances to other persons not named in the exception. The amount of the defendant's agreement is, that he warranted only that there should be 500 acres.

The plaintiff proceeds on the ground that the moiety of the patent, excepting only such parts as had been conveyed to *Stafford, Hoffnagle* and *Morehouse*, was conveyed by the defendant to him ; and that the general covenants of seisin, &c. extend to the moiety conveyed. The first proposition is true, that the defendant did convey a moiety of the patent, excepting only what was specifically excepted ; but the

NEW-YORK,
May, 1821.

WHALLON
v.
KAUFFMAN.

other proposition is not correct, that the general covenants were co-extensive with the grant. They were restrained and controlled by the special covenant, as to the quantity of land in the patent, which the plaintiff should exact of the defendant, in case of eviction. In any other view of the case, there would be no mutuality ; for if the conveyance to *Stafford, Hoffnagle* and *Morehouse* had been for 800 acres, the defendant was bound to compensate the plaintiff, he having received a consideration, probably, for 500 acres ; but if the conveyance to these persons should turn out to be for a small quantity, and there should be conveyances, unknown to the grantor, to other persons, and yet there should remain a larger quantity of land unconveyed, than either of the parties expected, there would be no mutuality in the bargain.

The plaintiff's counsel seemed to think that the covenant in relation to eviction, was an answer to the stipulation on the part of the plaintiff, that the tract should yield 500 acres, unaffected by the conveyances. I perceive no difficulty in this suggestion ; for if the plaintiff expended his money in erections upon the land, unapprised of any conveyance, and should thereafter be evicted, it would be perfectly just that he should be indemnified. Another answer, however, is, that the covenant relative to eviction, is a general one applicable to the other tracts, and it ought not, and cannot contro the special covenant under consideration. There must be a new trial; the costs to abide the event of the suit.

The other Judges concurred.
*Per totam Curiam.*

New trial granted.