## McBRIDE *v.* BOARD OF COMMISSIONERS OF PIERCE COUNTY.

*(Circuit Court, D. Washington, W. D.* October 15, 1890.)

1. INJUNCTION—WASTE—DISPUTED TITLE.
   A bill for an injunction to prevent the commission of waste, which shows that the plaintiff is an applicant to purchase the premises from the United States as mineral land; that his right to so acquire the title is being contested in the United States land-office; and that the defendants claim title adversely to him,—does not state a case within any known exception to the general rule, that equity will not interfere by injunction to prevent waste when the complainant's title is disputed.

2. SAME—INTERPRETATION OF STATUTE.
   Under the rule for construing statutes, that an act of the legislature is not binding upon the state unless made so by special and particular words, a state law, authorizing an injunction to prevent waste where two or more persons are opposing claimants to the same tract of public land under the laws of the United States, is not applicable in a case in which the state is one of the claimants.

3. SAME—"PERSONS."
   The word "persons," when used in a statute, does not include the state.

*(Syllabus by the Court.)*

*Wm. H. Ried,* for plaintiff.
*Snell, Bedford & Claypool* and *Calkins & Shackleford,* for defendants.

HANFORD, J. This is a suit for an injunction, brought against the defendants in their official and representative capacity as the board of county commissioners of Pierce county. A demurrer on the ground that there is no equity in the bill has been interposed, and the questions so raised are now to be passed upon. The sole object of the suit is to prevent the commission of waste upon portions of section 16, in township 20 N., of range 3 E., in Pierce county, which, as the bill alleges, the defendants, in their official character, threaten and intend doing by causing the timber trees growing thereon to be cut down and removed, which will materially lessen the value of the inheritance. The plaintiff shows no title to the lands, nor interest therein, other than as an applicant to purchase the same as mineral land from the United States, under the laws providing for the sale and disposal of lands valuable for the mineral therein, and the bill shows that his claims are being contested in the United States land-office by the state of Washington, and that the register and receiver of the land-office have not yet given their decision as to his right to acquire title. As now administered in some of the courts of this country, equity will not deny to one having the title to land an injunction to restrain the commission of waste thereon, seriously impairing the value of the inheritance, on the ground of the title being disputed, or because of the pendency of an action to establish the title or to determine any question affecting it. Such relief has been granted in a few cases, under peculiar circumstances, or where by statute the equity power of the courts has been enlarged, as in the case of *Lanier* v. *Alison,* 31 Fed. Rep. 100. But in general such relief will be granted only for the protection of an existing right, and only in favor of one in whom an estate of inheritance is shown to be vested by unquestioned proof.

v.44F.no.1—2

I can find no reason in the facts of the case before me to justify a departure from this time-honored rule.    On the contrary, the court could only, in the performance of an imperative and manifest duty under the law, exert its extraordinary power so as to interfere with the use of property known to be of immense value for purposes other than mining, in behalf of one whose claim to a mere inchoate right to acquire title is supported only by the assertion of a mere conclusion that the land was, under the laws relating to mineral lands of the United States, subject to his entry.    Section 604, of the Code of Washington Territory, has been called to my attention by counsel for the plaintiff, and it is urged that by this enactment a right to the injunction prayed for is given.    This statute does in effect authorize an injunction to prevent waste in cases where two or more persons are opposing claimants to the same tract of land under the land laws of the United States.    But it is not applicable to this case, for, although this is a case in which there are opposing claimants to the same tract of land, under the laws of the United States, inasmuch as the plaintiff is endeavoring to acquire it through the pretense of an intention on his part of working it as a mine, and it may be assumed as a matter of law, although it is not alleged in the bill, that the state of Washington claims it as a part of the grant made to it by act of congress for school purposes, still it does not come within the letter of the act, because the opposing claimants are not two or more persons. One of the opposing claimants is the state of Washington, and it is not a "person" within the ordinary or legal definition of that word.    The court of appeals of New York, in a case in which the definition of the word was of vital importance, and in which its decision was afterwards, on appeal, affirmed by the supreme court of the United States, held that the word "person" does not, in its ordinary or legal definition, include either a state or a nation.    *In re Fox,* 52 N. Y. 535; *U. S.* v. *Fox,* 94 U. S. 315.    Looking now to the spirit and intent of the law, it becomes only more clearly apparent that it cannot apply to this case.    The injunction prayed for cannot affect the defendants as individuals.    It is only sought to restrain the board of county commissioners from executing a law of the state as the agent and instrument of the state, and by no rule for the interpretation of statutes can such a law, made for the benefit of its citizens, be fairly invoked or applied as against the sovereign and maker of the law.    Blackstone, speaking of the prerogative of the crown, says:

"The king is not bound by any act of parliament unless he be named therein by special and particular words.    The most general words that can be devised ('any person, or persons, bodies politic or corporate,' etc.,) affect not him in the least if they may tend to restrain or diminish any of his rights or interests, for it would be of most mischievous consequence to the public if the strength of the executive power were liable to be curtailed without its own express consent, by constructions and implications of the subject."

In this country the same rule of construction has always been recognized.    Laws giving rights to litigants are in general made for citizens, and, unless clearly indicated by particular words, an intention to bind

the state by such enactments will not be presumed.    Endl. Interp. St. § 161.    This statute was first enacted by the territorial legislature, at its first session, in 1854, as part of the civil practice act, and I think it is obvious that the law-makers did not, either at the time of originally drafting it, or re-enacting it, contemplate that the territory or state would become an opposing claimant to land under the laws of the United States, or that the execution of its subsequently enacted laws could be thereby hindered or prevented.    The demurrer, therefore, should be sustained, and a judgment thereon entered for the defendant.