MONROE D. HERRINGTON v. LEE CLARK.

No. 8249.

1. PUBLIC LANDS—*Conflicting Railroad Grants.* The even-numbered sections within the place limits of the land grant to the Union Pacific Railway Company, Eastern Division, were reserved by act of congress and held for disposal only at double-minimum rates. A part of the same was within the indemnity limits of the grant made to the state to aid in the construction of the Missouri, Kansas & Texas railway, but, being already reserved to the United States for a specific purpose, it was not subject to selection by the latter company to supply deficiencies existing within the place limits of its grant.

2. ———— *Title in United States.* Until the lands within the indemnity limits were actually selected and specifically set apart under the direction of the secretary of the interior for indemnity purposes, the title thereto did not vest in the railway company, but remained in the United States and subject to its disposal.

3. RESERVATION—*Ineffectual Selection.* A selection for indemnity purposes by permission of the commissioner of the general land office of lands reserved to the United States for another specific purpose is ineffectual, and does not preclude the land department from thereafter devoting the lands to the purposes for which they were reserved.

4. COVENANT OF WARRANTY—*Paramount Title.* In an action to recover upon a covenant of warranty, the general rule is that the grantee can yield possession only to a hostile assertion of a paramount title; but "where the title to the land in controversy is in the United States, and liable to entry and settlement under the homestead laws of the government to all who possess the proper qualifications, that, of itself, is such a hostile assertion of the paramount title as will authorize the grantee to voluntarily submit to it." (*K. P. Rly. Co. v. Dunmeyer*, 19 Kan. 539.)

*Error from Labette District Court.*

ACTION by Monroe D. Herrington to recover from Lee Clark on the covenants contained in a conveyance of a quarter-section of land in Morris county. It was tried upon an agreed statement of facts, among which the following appear: For the purpose of aiding the Union Pacific Railway Company, Southern Branch,

the name of which was duly changed to the Missouri, Kansas & Texas Railway Company, a grant of the public land was made by an act of congress approved July 26, 1866. The line of the railway was definitely fixed opposite and parallel to the land in question and through to the southern boundary of the state on January 7, 1868. The railway company accepted the provisions of the act of congress on December 6, 1866, and in pursuance thereof had constructed and completed its railway from Fort Riley to the southern line of the state on June 6, 1870. The land in question was within the indemnity limits of the grant made by act of congress — that is, within 20 miles of the line and route of the railway. In lieu of an equal amount of land within the place limits lost to the railway company by reason of the attachment of homestead or pre-emption rights thereto, the railway company, under the proper rules of the department of the interior, did, on October 22, 1877, select the land in question, and at that time it was unoccupied and unimproved. The selection was made with the permission of the commissioner of the general land office, and when it was made the company paid therefor the amount of fees required, and a certificate of the selection was duly issued, but a patent for the same was never issued to the company. This selection remained in full force and unquestioned until May 13, 1886, when it was canceled by order of the commissioner of the general land office. The grounds upon which this cancellation was made were that the tract was situated within the limits of the grant to the Union Pacific Railway Company, Kansas Division, which antedates the grant to the Missouri, Kansas & Texas Railway Company, and, being in an even-numbered section, was reserved to the United States for

disposal at double-minimum rates, for the purpose of reimbursing the government for the lands granted to the senior company. It is also stated in the order that there were filings and homestead entry upon the record and uncanceled at the time of the grant, and, further, that the railway company did not designate any tracts lost to the grant in lieu of which the tract in question was selected. On June 2, 1863, one William M. Walters made a homestead entry upon the land and received his certificate therefor. He abandoned the land prior to December 3, 1866, and his entry was canceled for abandonment on October 7, 1875. On June 10, 1884, the railway company, claiming to own the land, conveyed the same to Lee Clark, who paid the full purchase price of the same, and afterward, for substantial considerations, it was transferred through several parties until January 7, 1885, when it was acquired by the plaintiff. The grantees subsequent to the defendant each, in turn, went into actual possession of the land, and remained in possession until July 31, 1886, and each grantee assumed and believed that the railway company had a good title to the land. On January 31, 1886, E. M. Cox made a homestead entry upon the land and took forcible possession of the same. He canceled the entry by relinquishment on March 10, 1888, when B. L. Herrington homesteaded the land, but his entry was canceled by relinquishment on July 28, 1888. On the last-named date E. M. Cox made a declaratory statement, claiming settlement on the land on July 27, 1888, and afterward made final cash proof, and the final certificate was issued to him on July 26, 1889. A patent for the land was issued to Cox on October 15, 1890. When the selection of the land by the railway company was canceled time was given in which

to appeal from the order of the commissioner, but no appeal was ever taken. No notice was given to the defendant or to any of his grantees by the plaintiff of any contest over the land in the United States land office, nor were legal proceedings of any kind ever commenced by Cox against the plaintiff to oust or evict him from the possession of the land.

Upon the facts the court found in favor of the defendant, holding that, by reason of the abandonment of the homestead by Walters, the land passed under the grant to the railway company, and that the plaintiff's title to the land, derived from the railway company, had not failed. Judgment was thereupon awarded in favor of the defendant for his costs. The plaintiff excepts, and brings the case here. The opinion was filed April 11, 1896.

*J. H. Mahan*, for plaintiff in error.

*T. N. Sedgwick*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : The right of the plaintiff to recover depends upon whether there has been a failure of the title to the land in question, and which the defendant attempted to convey by a deed containing full covenants. If the railway company and those claiming under it acquired no title to the land, and if it remained public land, subject to pre-emption or homestead entry, then Cox acquired a good title to the land, and the contention of the plaintiff must prevail. The claim that the plaintiff must fail because he did not resist the entry of Cox is without force, if the paramount title was in the United States. "Where the title to the land in controversy is in the United States and liable to entry and settlement under the provisions of the

homestead law, that, of itself, is such a hostile asser-
tion of the paramount title as would authorize the
purchaser to voluntarily submit to it." (*K. P. Rly. Co.
v. Dunmeyer*, 19 Kan. 539.)   The question, then, is :
Did the railway company acquire the land under the
grant, and were the steps subsequently taken suffi-
cient to vest it with title thereto?   Under the act of
congress, there was granted to the state for the benefit
of the railway company "every alternate section of
land or parts thereof, designated by odd numbers, to
the extent of five alternate sections per mile on each
side of the road, and not exceeding in all 10 sections
per mile."   The act contained the provision that if
any of the land specifically granted had been sold, re-
served, or if the right of pre-emption or homestead set-
tlement had attached to the same, an equal amount of
other land might be selected from the public lands near-
est to the excepted sections, and within 20 miles from
the line of said road, for the purpose of making up such
deficiency.   (14 U. S. Stat. 289.)   The land in ques-
tion was not a part of the alternate odd-numbered sec-
tions specifically granted, but was within the 20-mile
limit from which lands might be selected to supply
those lost to the grant from sales or other disposition
made before the date of the grant.   If it had been
within the place limits of the grant; the right of the
company would have attached when the line of rail-
way was definitely located opposite to it ;   but the
grant of indemnity lands does not attach to any spe-
cific tracts until it is known what the deficiency is,
and a selection is made to supply the deficiency, as
the law requires.   The court below seems to have
proceeded upon the theory that the homestead entry
of Walters, made in 1863, would, if it had been kept
alive, have operated to exclude the land from the pro-

visions of the grant; but that, by reason of his abandonment of the homestead, it passed under the grant to the railway company, and because of that fact the plaintiff's title to the land had not failed. Not being within the place limits of the grant, it is immaterial that there was a homestead entry upon the land at the time of the grant or of the definite location. Being within the indemnity limits, it was only important to determine whether it was public land and subject to selection at the time the selection was actually made. If it had been within the place limits, the uncanceled entry of Walters would, under the recent decisions of the supreme court of the United States, and notwithstanding the abandonment, have operated to exclude it from the grant. (*Railroad Co. v. Whitney*, 132 U. S. 357; *Whitney v. Taylor*, 158 id. 85. See, also, *Newhall v. Sanger*, 92 U. S. 761; *K. P. Rly. Co. v. Dunmeyer*, 113 id. 629; *Bardon v. Railroad Co.*, 145 id. 535.) So far as the land in controversy is concerned, the legal effect of an abandonment was wholly immaterial, as no title to the land could be acquired by the company until the selection was made, and prior to that time the entry of Walters had been duly canceled.

Although the case was disposed of by the trial court upon an erroneous view, the question remains whether the railway company obtained title to the land by the subsequent selection that was made. It appears to have been made with the permission of the land department, in lieu of land lost to the company by reason of the attachment of homestead or pre-emption rights. The fees were paid, and a certificate of selection was duly issued to the company. The land was within the indemnity limits of the grant, and, if it was subject to be selected by the company as indemnity land, it would seem, from the agreed facts, that

the selection was properly made, and that the company was entitled to the land. It appears, however, that the land was in an even-numbered section, within the place limits of the grant to the Union Pacific Railway Company, and, further, that it had been reserved to the United States for a specific purpose, and was therefore not subject to disposal under the general laws relating to the public domain. The granting act of July 26, 1866, under which the land in question was selected, contains a reservation clause excepting from the operation of the act all lands reserved by congress or other competent authority for the purpose of aiding in any object of internal improvement or other purpose whatever, except for right of way of the railway. Under the Union Pacific grants, the odd-numbered sections within 20 miles of the line of road were granted, and by another provision the even-numbered sections within the limits of the grant were made double-minimum lands, and rated at $2.50 per acre, and were only subject to entry under the laws relating to the disposal of such lands. (12 U. S. Stat. 489 ; 13 id. 356 ; 14 id. 79 ; 15 id. 39.) When the even-numbered sections within the place limits of the Union Pacific grant were set apart for the specific purpose named, they were, in fact, reserved by congress, and in a certain sense segregated from the body of the public lands of the United States. This was the view taken in the case of *United States v. M. K. & T. Rly. Co.*, 141 U. S. 358. It was held that, as the result of the construction of the railroad aided would be an increase of the market value of the sections remaining to the United States within the limits of the grant, the sections so reserved were excluded from the operation of the grant. "In order that the government might get

the benefit of such increase of value and thereby re-imburse itself to some extent for· the land granted, . . . the act of 1863 made special provisions in reference to those reserved sections, and thereby, and for the accomplishment of particular purposes, ex-pressly. declared, segregated them from the body of the public lands of the United States.'' Until the lands were actually selected and set apart under the direction of the secretary of. the interior specific-ally for indemnity purposes, the title thereto did not vest in the company, but remained in the United States and subject to its disposal. Long before the selection was made, the lands in question had been re-served and specifically set apart for a purpose wholly inconsistent with the theory that they might be taken for indemnity. If the company was permitted to select from the double-minimum lands, it would thereby receive lands of twice the value of those lost to the company, and in lieu of which the selection was made. The theory·upon which indemnity was provided was, that if the lands specifically granted had been disposed of, or the rights of settlers had attached to them, other equivalent lands might be selected in their place. It was certainly not the in-tention of congress to enhance the grant by allowing a selection of lands of twofold the value of those lost by previous disposition or reservation for other pur-poses. As the land in question had been reserved to the United States for a specific purpose, it was not subject to selection by the railway company, and the land department was without authority to transfer the land to the company by the process of selection, certification, or by patent. No patent, however, was issued to the company, but, upon proceedings which appear to be regular, a final certificate was issued to

Cox, and subsequently a patent in due form was issued to him. It therefore appears that there was a complete failure of title, and that plaintiff is entitled to recover the damages sustained. We cannot ascertain from the agreed facts the amount of damages which should be awarded, and hence judgment cannot be ordered upon the findings.

The judgment will be reversed, and the cause remanded to the district court to try and determine the amount of damages which the plaintiff has sustained.

All the Justices concurring.