[No. 3641.  Decided August 27, 1901.]

WEST COAST MANUFACTURING AND INVESTMENT COMPANY, *Appellant*, v. WEST COAST IMPROVEMENT COMPANY, *Respondent*.

APPEAL—SUPERSEDEAS BOND—SUFFICIENCY.

A judgment in favor of defendant for costs upon the dismissal of plaintiff's action is a judgment for money, and a supersedeas bond upon appeal therefrom need only be in a sum double the amount of such costs, in addition to the $200 penalty required in the appeal bond, under Bal. Code, § 6506, which provides that the penalty of an appeal bond shall not be less than $200, and, in order to effect a stay of proceedings, where the appeal is from a final judgment for the recovery of money, it shall be in a penalty double the amount of the damages and costs recovered in such judgment.

PLEADING—BREACH OF WARRANTY OF TITLE—IMMATERIAL AVERMENTS.

In an action for the breach of a covenant of title, in a warranty deed, the action of the court in striking from the complaint, on motion of defendant, the words, "and claimed to own and held itself out as the owner of all the lands to deep water," was not erroneous, when such stricken matter referred to claims made by defendant a year prior to the execution of the deed, since the intention of the parties must be gathered from the deed itself, when there is no ambiguity in its terms.

VENDOR AND PURCHASER—WARRANTY OF TITLE—LIABILITY OF VENDOR OF STATE LANDS.

Where a grantor conveys a tract of land by metes and bounds, with full covenant of warranty of title, he is bound by his covenant as to the whole tract, although a portion of it was openly, plainly, visibly and notoriously tide land, claimed by the

state, and from which the grantee was subsequently evicted by the state under claim of paramount title.

SAME—COVENANT AGAINST PERSONS—WHEN INCLUDES STATE.

A grantor who warrants his title generally against "all persons whatsoever" is liable thereon, although the outstanding para· mount title rests in the state instead of in a person.

SAME—ACTION FOR BREACH—WHAT CONSTITUTES EVICTION.

When the paramount title is in the state and the covenantee in a deed from a private grantor is ordered by the state to either vacate or to purchase the land, and he accordingly purchases from the state in order to protect improvements made by him while in possession under his grantor's deed, the purchase must be considered such an eviction as to constitute a breach of the covenants of title and for quiet enjoyment.

SAME—LIMITATIONS.

The statute of limitations will not begin to run against an action for breach of covenants of warranty of title and for quiet enjoyment until the eviction of the grantee.

Appeal from Superior Court, King County.—Hon. WILLIAM HICKMAN MOORE, Judge. Reversed.

*James Kiefer,* for appellant.

*Piles, Donworth & Howe,* for respondent.

The opinion of the court was delivered by

WHITE, J.—Respondent moves to dismiss this appeal for the reason that no appeal bond has been executed or filed as required by the statute. The judgment appealed from was entered pursuant to an order sustaining the respondent's demurrer to appellant's complaint, appellant having elected to stand on its complaint, and the action having been accordingly dismissed on the merits. The judgment is that the plaintiff take nothing by the action, and that the defendant recover of the plaintiff its costs and disbursements to be taxed. From the recitals in the judgment it may be conceded that it is a final judgment on the merits. The record shows that the amount of the

costs and disbursements taxed is $10. The judgment of dismissal, and the amount of costs taxed, are set forth in the recitals of the bond. The penalty of the bond is in the sum of $250. The condition of the bond is to the effect that the appellant will pay all costs and damages that may be awarded against it on the appeal or on the dismissal thereof, not exceeding two hundred dollars, and will pay and satisfy and perform the judgment appealed from in case it shall be affirmed, and any judgment or order which the supreme court may render or make, or order to be rendered or made, by the superior court from which the appeal is taken. The respondent contends that, inasmuch as the bond is both an appeal and supersedeas bond, the penalty, under § 6506, Ballinger's Annotated Codes and Statutes, should be in the sum of at least four hundred dollars. Under § 6506, *supra,* the penalty of an appeal bond shall not be less than two hundred dollars, and, in order to effect a stay of proceedings, where the appeal is from *a final judgment for the recovery of money,* it shall be in a penalty double the amount of the damages and costs recovered in such judgment; in other cases it shall not be less than $200, and sufficient to save the respondent harmless from damages by reason of the appeal, as the judge of the superior court shall prescribe. While the judgment appealed from was a judgment for costs, it was as much a judgment for money as if it had been for a principal sum and costs. The statute is clear, and there is no room for construction. It means just what it says, viz., that all final judgments for money may be superseded on appeal by a bond for double the amount of such judgment. Here there is a judgment for ten dollars, and a bond in the penal sum of two hundred and fifty dollars. A bond for $220 would have been sufficient and a literal compliance with the statute. The fact that

it is more than the exact sum cannot militate against the appellant. The purpose of a supersedeas bond is to protect the respondent in the collection of his judgment and in the enforcement of the relief awarded him by the judgment. All the respondent could obtain by this judgment was the sum of ten dollars. Upon the payment of this amount the respondent was bound to fully satisfy and discharge the judgment upon the records of the court. The bond in this case is more than double the amount of the money judgment appealed, and two hundred dollars additional, as required by law. Under the conditions of the bond, the respondent was fully secured in the amount recovered by it in the judgment, as well as for costs and damages up to two hundred dollars on appeal. The motion to dismiss the appeal is therefore denied.

The complaint in this action, omitting formal allegations, is substantially as follows:

"Second. That on or about the 22d day of October, 1889, the plaintiff purchased from the defendant a certain tract of land, situated in Ballard, King county, Washington, and paid part of the purchase money expressed in the deed hereinafter mentioned, and thereafter, on the 13th day of August, 1890, upon payment by the plaintiff of the balance of the cash consideration for said purchase, the defendant by its officers thereunto duly authorized made, executed, and delivered to the plaintiff its certain deed to said premises, in the words and figures following, to wit:

" 'This indenture, made the 13th day of August, 1890, between The West Coast Improvement Company, a corporation duly incorporated, organized and existing under and by virtue of the laws of the state of Washington, the party of the first part, and the West Coast Manufacturing and Investment Company of Ballard, Washington, also a corporation, the party of the second part:

" 'Witnesseth, that the said party of the first part for and in consideration of seven hundred and fifty dollars

to it paid by the said party of the second part, does hereby grant, bargain, sell and convey to said party of the second part and to its successors and assigns forever, the following described tracts or parcels of real estate, lying and being in the county of King, state of Washington, and particularly bounded and described as follows, to-wit: Beginning at the corner of sections 11, 12, 13 and 14, Township 25 North, Range 3 East, thence north on the line between sections 11 and 12, 62 7-10 feet to the southerly margin of Shilshole Avenue, thence north 66 deg. 18 mins. west along said marginal line 252 feet to the easternmost corner of the tract described as follows: From its easternmost corner run thence S. 23 deg. 42 mins., west 330 feet; thence N. 66 deg. 18 mins., west 250 feet; thence N. 23 deg. 42 mins., E. 330 feet to the southerly line of Shilshole Avenue; thence S. 66 deg. 18 mins. E. along said marginal line 250 feet to the place of beginning, together with all the littoral, riparian and shore rights thereunto belonging or in any wise appertaining.

" 'Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining. And also all the estate, right, title and interest, at law and in equity therein or thereto.

" 'To have and to hold the said premises to the said party of the second part, and to his successors and assigns forever; and the said party of the first part does covenant with the said party of the second part and its legal representatives, forever, that the said premises are free from all incumbrances; and the said party of the first part will, and its successors and assigns shall warrant and defend the same to the said party of the second part, its successors and assigns forever, against the lawful claims and demands of all persons whatsoever.  . . . . . '

"Third.   That at the time of making said contract, to-wit: in October, 1899, the defendant had recently platted and laid out a townsite in the vicinity of and adjacent to the lands hereinbefore described, and had just placed the same upon the market, and had platted said townsite to deep water (and claimed to own and held itself out as the

owner of all the lands to deep water), and the actual consideration for said conveyance, in addition to the payment of seven hundred and fifty dollars in cash, was that the plaintiff should erect and put in operation in a short time a shingle mill and shingle manufacturing plant upon said premises for the purpose of aiding and promoting the sale of the lands of the defendant so platted and laid out into a townsite.

"Fourth. That, upon the making of said contract of sale and the payment of the first of said purchase money, defendant put the plaintiff into possession of said premises and plaintiff erected thereon valuable improvements, to-wit: A shingle mill and shingle manufacturing plant and put the same into operation, and expended in that behalf a sum exceeding ten thousand dollars, and established thereon a large and profitable business.

"Fifth. That afterwards, to-wit: On or about the 10th day of December, 1894, the state of Washington by its Board of State Land Commissioners, thereunto duly authorized by the laws of said state, laid claim to the title to the westerly part of said tract of land described in said deed, to-wit: to seventy-seven thousand, five hundred seventy-one and five-tenths (77,571 5-10) square feet of the premises conveyed by the said deed, and maintained and asserted the title of the state of Washington to the same as tide lands belonging to said state, and platted the same for sale as tide lands, and thereafter gave the plaintiff the option of purchasing said lands from the state of Washington, at a certain price placed thereon by the said state of Washington, or of vacating and relinquishing said premises.

"Sixth. That the title of said state of Washington to said lands was perfect and unassailable and a title paramount to that conveyed by the defendant to the plaintiff, and all of plaintiff's valuable improvements exceeding in value the sum of twenty thousand dollars and its business established and carried on on said premises were all situated on the tide lands of the state of Washington as shown by the plat hereunto annexed and made a part hereof and marked 'Exhibit A,' and in order to

protect and save the same plaintiff was obliged to pay and did pay to the state of Washington for said seventy-seven thousand five hundred seventy-one and five tenths (77, 571 5-10) square feet on said premises so conveyed by the defendant to the plaintiff the sum of one thousand five hundred twenty-two and 72-100 dollars ($1,522.72) in lawful money, and acquired the title of the state thereto and received a conveyance therefor from said state of Washington.

"Wherefore, plaintiff demands judgment against the defendant for the sum of one thousand, five hundred twenty-two and 72-100 dollars ($1, 522.72) and interest thereon from July 1, 1895, and costs of suit."

The plat referred to in the complaint shows the upland portion of the tract to be a narrow strip of land, triangular in form, extending across the entire width of the tract, about eight feet wide on one side of the tract and thirty-one feet wide on the other side of the tract, lying between the line of Shilshole avenue on the east side and the meander line on the west side. The westerly part of said tract is tide lands. The harbor line, at the shortest distance, lies one hundred and fifty-one feet from the westerly boundary of the tract conveyed, and between it and the inner harbor line is Block 6 of Ballard tide lands, while other tide lands lie on the north and south sides of the tract specifically conveyed.

On motion of the respondent the words, "and claimed to own and held itself out as the owner of all the lands to deep water," in the third paragraph of the complaint were stricken on the ground that the same were an irrelevant and immaterial allegation. This is assigned as error. This action is brought on an alleged breach of warranty contained in a deed executed August 13, 1890. The matter stricken by the court refers to a claim made by the respondent in the year 1889. If this was an action for deceit, misrepresentation, or fraud, the allegation

might be material. This action, however, is for the breach of a plainly written covenant. There is no ambiguity in the language of the deed. The intention of the parties must be derived from the deed itself. For these reasons we think the matter alleged was wholly immaterial, and it was properly stricken.

A demurrer was interposed on the grounds that the complaint did not state facts sufficient to constitute a cause of action, and that the action was not commenced within the time limited by law, and that several causes of action had been improperly united. This demurrer was sustained. The ruling of the court in this respect, as well as the judgment of dismissal on the refusal of the appellant to plead further, are assigned as error, and will be considered together. They raise squarely the broad question whether a warranty such as was given in this case covers tide lands, the paramount title of which was in the state at the time the deed was executed. The respondent contends that it does not, because it appears that at the time of the original arrangement for purchase, and also at the time the deed was made, that the portion of the premises for which appellant afterwards paid the state was openly, plainly, visibly, and notoriously tide land, of which the state was the owner; and, further construing the deed in the light of the physical facts which existed at the time as shown by the diagram referred to in the complaint, there was no intention on the part of the respondent, in using the general language embraced in the deed, to covenant against the rights of the state in the tide land portion of the premises; that the description of the premises in the deed sufficiently makes it known; that, so far as tide lands are concerned, it is only the littoral, riparian, and shore rights that are conveyed, and not the soil. The original contract, upon which the deed is founded, is not set forth

in the pleadings. The presumption is, if this was material, that the deed is in compliance with the contract. The general rule for the construction of covenants is that the intention of the parties, when it can be ascertained from the instrument, must govern, and to come at this all the parts of it must be considered together. The real meaning of the parties must be gathered from the instrument itself, and it is only when the meaning of the words used are doubtful that surrounding circumstances are to be considered, and parol proof is not admissible to explain the covenants in a deed where there is no ambiguity. *Clark v. Devoe,* 124 N. Y. 120 (21 Am. St. Rep. 652); *Easterby v. Heilbron,* 1 McMul. 462.

"The cardinal point is, what was the intention of the parties, as derived from the deed itself? When that is discovered, it ought to be carried into effect, if it can be done consistently with the rules of law. If the words and provisions are doubtful, they are to be taken most strongly against the grantor. If they are susceptible of different constructions, the court may take into consideration the circumstances attending the transaction, the particular situation of the parties, and the state of the thing granted at the time of making the grant, for the purpose of ascertaining the probable intent." WOODWORTH, J., in *Whallon v. Kauffman,* 19 Johns. 97.

"The words of the covenant itself are the primary source from which this intention is to be drawn. These are the symbols appointed by the parties to denote their purpose, and they are generally the best and surest guide to its discovery. Hence, when the covenantor has drawn a covenant in general and unqualified form, it must be presumed that he so intended it, and it will be so construed unless such presumption is utterly irreconcilable and incompatible with a limited covenant in the same deed." 8 Am. & Eng. Enc. Law (2d ed.), 75, and cases cited.

This is the rule where the deed contains a covenant in general and unqualified form, together with limited

covenants; and we see no reason why the same rule should not prevail when circumstances outside of the instrument are invoked to limit the general covenant contained in the instrument. The words and provisions of the covenants in the deed are not doubtful, and they are, on the face of the deed, susceptible of but one construction. In such a case the intent of the parties must be ascertained from the deed itself, without regard to the circumstances attending the transaction and the state of the thing granted. The deed, in terms, by metes and bounds, purports to convey to the appellant a tract of land 330 feet long by two hundred and fifty feet wide; in all, 82,250 square feet. After the description of the tract conveyed in the granting clause, come these words:

"Together with all the littoral, riparian and shore rights thereunto belonging or in any wise appertaining. Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, on in any wise appertaining. And also all the estate, right, title and interest, at law and in equity therein or thereto."

We think that the littoral, riparian, and shore rights and tenements, hereditaments, and appurtenances here mentioned refer to those rights, etc., as they appertained to the tract described by metes and bounds, and not to the mere upland in the tract. The words, "and also the estate, right, title, and interest, at law and in equity therein or thereto," also refer to the entire tract as described, and their insertion in the deed does not in any way limit or control the estate granted and conveyed by the words previously used in the granting clause, so as to restrict the grantee to the right, title, and interest only that the grantor actually had. These words were added rather for fullness and certainty, and not with a view of any limitation of the tract conveyed. *Hubbard v. Apthorp,* 3 Cush. 419. The word "premises," used in the covenanting clause

in the deed, refers to the entire premises conveyed, upland as well as tide land. *Loomis v. Bedel,* 11 N. H. 74; *Bayley v. McCoy,* 8 Ore. 259.

There can be no question but that the covenant of warranty in the deed set out in the complaint referred to the entire tract described by metes and bounds. The covenant of warranty in the deed operates merely as an assurance of the title which the deed purports to convey. It does not pass any estate, or enlarge or restrict the estate conveyed.

"The obligation in a general warranty of title is not that the covenantor is the true owner, or that he is seized in fee with right to convey, but that he will defend and protect the covenantee against the rightful claims of all persons thereafter asserted." *Green v. Irving,* 28 Am. Rep. 366.

Parol evidence is not admissible to control the covenants in a deed. Why, then, should the knowledge or proof of physical facts be given this effect?

"Knowledge, or notice, however full, of an incumbrance, or of a paramount title, does not impair the right of recovery upon covenants of warranty. The covenants are taken for protection and indemnity against known and unknown incumbrances or defects of title." *Copeland v. McAdory,* 100 Ala. 553 (13 South.545).

"It is a well-settled rule that knowledge by the grantee at the time of the conveyance, of the existence of an incumbrance on the land, or of a defect in the grantor's title, does not control the force and effect of the express covenants in the deed or affect the question of breach.

"If the grantor wishes to exclude known defects or incumbrances from the operation of the covenants, he should do so by incorporating the intended limitation in the covenants themselves. Failing to do so he must be bound by the express words of the covenants, and cannot be permitted to destroy the force of their language by parol. Besides, it does not follow from the fact that the parties

had knowledge of a particular incumbrance on the land, or defect in the title, that they intended to exclude it from the protection of the covenants; men often    take warranties knowing of defects in the title.

"The general rule above stated has been qualified in some of the United States.  It has been held that a highway which is open and in use, so that the grantee must be charged with notice of its existence, is excepted from the protection of the covenants in a deed.  And, again, it has been held that the covenants do not extend to apparent easements which openly affect the physical condition of the land, or, what amounts to the same thing, of which the grantee has knowledge.  But these exceptions are contrary to the vast preponderance of authority, according to which the appropriate covenants in a deed, in the absence of statutory provision to the contrary, extend to public and private ways, and to other easements whether or not they affect the apparent physical condition of the land or are otherwise known to the grantee." 8 Am. & Eng. Enc. Law (2d ed.), 86-88.

We have examined the long list of authorities cited to support the above text, and have no hesitation in saying that the author's conclusions are fully borne out by the authorities.  But one case has been cited by respondent in opposition to the view here expressed, and that is the case of *Feurer v. Stewart,* 83 Fed. 793.  The court in that case says:

"When an estate is conveyed by a deed describing it so that the parties must understand therefrom that the estate is subservient to a superior title, which cannot be extinguished nor acquired, the grantee takes it *cum onere,* and no right of action can accrue in his favor upon the covenants in the deed, unless in the covenant the grantor specifically agrees to stand liable for losses resulting from the assertion of such superior title.  If not mentioned in the covenant, it will be presumed that the parties have made allowance for a known defect of title in fixing the purchase price, and the grantee, having only paid for what

he gets, cannot afterwards be heard to complain that he has been damaged by a broken contract on the part of the grantor. This case is distinguishable, by its peculiar facts and circumstances, from all precedents to which my attention has been directed; but the above propositions are applicable here, and the same are, in a measure, supported by the following authorities: Co. Litt. (Butler & Hargrave's Notes; 1st Am. from 19th London ed.) 384a; 2 Sugd. Vend. (8th Am. ed.) 230; *Montgomery v. Reed,* 69 Me. 510-516; *Holmes v. Danforth* (Me.) 21 Atl. 845; *Ake v. Mason,* 101 Pa. St. 17; *Kutz v. McCune,* 22 Wis. 628; *Barre v. Flemings* (W. Va.) 1 S. E. 731. The words of the covenant seem to indicate an intention in the minds of the parties to restrict the covenant to correspond to the known situation of the premises, so that the liability of the vendor shall not be greater than would be reasonable for her to assume. The covenant is not to defend against all lawful claims, but against all persons lawfully claiming or to claim. Now, the commonwealth is not a person, and its claim of title is not mentioned specifically, nor is it within the general terms of the covenant, if the words are to be considered as having been selected to accurately express the intention of the parties. Rawle, Cov. (5th ed.) p.; 171; *McBride v. Board,* 44 Fed. 17; *In re Fox,* 52 N. Y. 535; *U. S. v. Fox,* 94 U. S. 315-321."

From this quotation it seems that the learned judge extends the exception to the rule that a covenantor is bound by the express words of his covenant so as to include not only an easement, but the principal subject-matter. He also, holds, contrary to any authority we have been able to discover, that, where the grantee knows of a superior title which cannot be extinguished or acquired, the grantor must expressly covenant to stand liable for losses resulting from the assertion of such superior title, or he will not be bound. The rule, as we understand it to be, is, as laid down in the text already cited from the 8th Am. & Eng. Enc. Law, that, where one covenants to warrant generally, he is bound to answer for all defects, and, if he desires to

avoid any particular defect, he must do so by a limitation in the instrument itself. Says BREWER, J., in *Barlow v. Delaney,* 40 Fed. 97:

"The very purpose of the covenant is protection against defects; and to hold that one can be protected only against unknown defects would be to rob the covenant of more than one-half its value, besides destroying the force of its language. If from the force of a covenant it is desired to eliminate known defects, or to limit the covenant in any way, it is easy to say so. General in its language it reaches to all defects within its terms, known or unknown."

With the exception of the case of *Feurer v. Stewart, supra,* the cases cited by the respondent are all cases of easement or servitude. The controversies in these cases arise over some physical easement or servitude only partially affecting the subject-matter of the grant, and the question is one of liability of the grantor for the depreciation of the estate to that extent. Here is plain failure of title to 77,571.5 square feet out of 82,250 square feet, —nearly all the land conveyed; and we do not think the grantor should be relieved from the plain provisions of his contract, to protect the grantee against the rightful claims of all persons, under the rule laid down by those courts excepting visible easements and servitudes from the covenant of general warranty or the warranty against incumbrances. Where the title to the land itself absolutely fails, and the grantee takes nothing by his deed but a mere fraction of the land,—as in this case,—we are at a loss to see how he can be said to take the land *cum onere,* for in fact he takes nothing. We have examined the authorities cited by the respondent in his brief, and on which the decision in *Feurer v. Stewart, supra,* is based, and they all relate to easements or servitudes, and in such cases it is said the grantee takes the land *cum onere.* The case of *Montgomery v. Reed,* 69 Me. 510, was where

there was a conveyance of tide flats, the title to which passed by the deed. The court held that the owner of the flats held them subject to the rule that, until he built upon or enclosed them, the public had a right to use them for the purpose of navigation while they were covered by the sea, and the right of the public to use them was not an incumbrance within the usual covenant against incumbrances. The case of *Holmes v. Danforth,* 83 Me. 139 (21 Atl. 845), was where land was conveyed by deed with covenant of warranty against incumbrances. The land was bounded by the center of a public road, and so described in the deed, so that from the instrument itself, without resort to oral testimony or extraneous evidence, knowledge of the fact was brought home to the grantee; and it was held that there was no breach of the covenant against incumbrances by reason of the road, and that the grantee took the land *cum onere.* In the case of *Ake v. Mason,* 101 Pa. St. 17, where a plan for laying out a street had been confirmed by the proper court, and was a public record, of which the purchaser was bound to take notice, a vendee of land could not recover damages from his vendor upon the opening of the street, on a covenant of general warranty and against incumbrances, for the portion of the land occupied by the street. In the case of *Kutz v. McCune,* 22 Wis. 628 (99 Am. Dec. 85), where at the time of the purchase a part of the land was overflowed by a mill pond created by a dam on land not belonging to the defendant, which dam had been maintained long enough to create a prescriptive right in the owner of it to flow the land in question, it was held that, as the overflowed land was obviously, at the time of purchase, subject to the servitude or easement of the overflow of water from the dam, there was no breach of the covenant against incumbrances. In the case of *Barre v. Flem-*

*ings,* 29 W. Va. 314 (1 S. E. 731), it was held that the riparian proprietor of lands bounded by the Ohio river in the state of West Virginia owns the fee in the lands to low water mark, subject to the easement of the public for navigation in that portion lying between high and low water mark; and that, when land lying on the Ohio river is conveyed by deed with general warranty, and calling for low water mark on said river as one of its boundaries, the warranty is not broken by reason of the fact that the public owns an easement therein. In none of the cases cited to sustain the ruling of the court in *Feurer v. Stewart, supra,* did the title to the principal thing fail, as in the case at bar, and they were all cases involving the question of visible easements or servitudes over or annexed to the land, of which the grantee knew or was bound to take notice.

The additional case of *Janes v. Jenkins,* 34 Md. 1 (6 Am. Rep. 300), cited by the respondent, is also a case involving a visible servitude,—a window light,— in which it was held that the vendee of an adjoining tract, under the circumstances detailed in the case, took the land with the servitude annexed, and the enjoyment thereof by the owner of the adjoining lot constituted no breach of a covenant of special warranty. But it is claimed that, inasmuch as the covenant of warranty is against "all *persons* whatsoever," that it is not a covenant against the state; that the state is not a person, and as the state is not mentioned specifically, it is not within the covenant. It is true that in some cases it has been held that the term "person" does not, in ordinary legal signification, embrace a state or government. There are many cases, however, to the contrary. *Martin v. State,* 24 Texas, 62; *State v. Herold,* 9 Kan. 194; *Republic of Honduras v. Soto,* 112 N. Y. 310 (19 N. E. 845, 8 Am. St. Rep. 744). The following

cases expressly hold that, although the outstanding paramount title may rest in the state or the United States, the grantor who warrants his title generally against all persons is liable upon his covenants of warranty. *McGary v. Hastings,* 39 Cal. 360 (2 Am. Rep. 456); *Green v. Irving,* (Miss.) 28 Am. Rep. 360; *Herrington v. Clark,* 56 Kan. 644 (44 Pac. 624); *Kansas Pacific Ry. Co. v. Dunmeyer,* 19 Kan. 539; *Meservey v. Snell,* 94 Iowa, 222 (62 N. W. 767, 58 Am. St. Rep. 391).

The covenant would certainly include a person claiming as grantee of the state, and for that reason we cannot see why it does not include the state itself. Where the paramount title is in the state, and the covenantee buys in the same under circumstances such as are detailed in the complaint, this will be considered such an eviction as to constitute a breach of the covenant of warranty or for quiet enjoyment. *Green v. Irving,* 28 Am. Rep. 360; Rawle, Covenants for Title (5th ed.), §§ 142, 143, 146; *Loomis v. Bedel,* 11 N. H. 75. The covenant against incumbrances is generally a covenant *in praesenti,* and is broken, if at all, at the time of conveyance. The covenant of warranty is a covenant *in futuro,* runs with land, and is broken at the time of the eviction. The covenant for warranty and that for quiet enjoyment are, in the main, identical. It has been said that the covenant for quiet enjoyment is to defend the possession, while the covenant of warranty is to defend not merely the possession, but also the land, and the estate in it. The deed set forth in the complaint contains a covenant to warrant and defend generally. The eviction set forth is under the superior title of the state. The action was commenced in September, 1899. The eviction took place in December, 1894, when the state claimed possession, and gave to the

purchaser the option of vacating that portion claimed by the state or purchasing its title. The six years statute of limitation had not then run. There has been no improper joinder of actions. The question of the measure of damages is not now before us. The court below should have overruled the demurrer. The judgment is reversed, and this action is remanded, with instructions to the court to overrule the demurrer; the appellant to recover the costs of this appeal.

REAVIS, C. J., and ANDERS, FULLERTON and DUNBAR, JJ., concur.