[No. 2637-1. Division One. September 15, 1975.]

ELIZABETH E. FOLEY, *Individually and as Administratrix, Appellant*, v. GEORGE E. SMITH, ET AL, *Respondents*.

*Payne & Verzani* and *Robert J. Verzani,* for appellant.

*Keller, Rohrback, Waldo, Moren & Hiscock* and *Melvin F. Buol,* for respondents.

[As amended by order of the Court of Appeals November 21, 1975.]

ANDERSEN, J.—

## FACTS OF CASE

This case is another chapter in a decade-long course of litigation relating to a 37-acre parcel of real estate in the Kent Valley area of King County.

The property was repeatedly sold during a boom in the valley land which had been triggered by the announcement of large new industrial facilities to be constructed in the area.

The factual intricacies of the various speculations and transactions involved in this course of litigation are well chronicled in earlier appellate decisions. *Hudesman v. Foley,* 73 Wn.2d 880, 441 P.2d 532 (1968); *Hudesman v. Foley,* 4 Wn. App. 230, 480 P.2d 534 (1971).

As decided in the previous litigation, Mr. and Mrs. Foley sold the real estate to Mr. and Mrs. Smith for $70,000 after having previously contracted to sell it to another. The Foleys received the Smiths' down payment, note and mortgage back on the property. They then conveyed the land to the Smiths by a statutory warranty deed dated November 11, 1965.

The party who had previously contracted to purchase the property from the Foleys brought a specific performance action against the Foleys and the Smiths, seeking to obtain title to the property.

Mr. Foley passed away on May 26, 1967, while the specific performance action was pending. Subsequently, letters of administration were issued to Mrs. Foley on February 9, 1968, and she duly published notice to estate creditors commencing February 10, 1968. No claim was filed against the estate by the Smiths within the 4-month claim period or at any time.

The trial of the specific performance case took place in November of 1968 with Mrs. Foley continuing in that case as an individual defendant and also as the personal representative of her late husband's estate. That trial resulted in a decree for specific performance being entered on December 20, 1968, in favor of the prior purchaser. By the terms of that decree, the Foleys and the Smiths were divested of all title to and interest in the land in question.

The specific performance case was appealed to this court and did not finally conclude until June 14, 1971. This court affirmed the trial court's decree and it was on that date that the remittitur went down. *Hudesman v. Foley*, 4 Wn. App. 230, 480 P.2d 534 (1971).

The prior purchaser who had prevailed in the specific performance action paid his purchase price in full into the registry of the court in that case. There were no cross actions between the Foleys and the Smiths and their respective interests in the net proceeds of the sale to the prior purchaser were not adjudicated in that case.

Mrs. Foley and the Smiths were in agreement that the

Smiths were entitled to receive back the money the Smiths had previously paid to the Foleys for the property. This was the sum of $41,714.24. Agreement was also reached as to the distribution of certain other portions of the moneys that the prior purchaser had paid to get the property. No agreement could be reached, however, as to distribution of the remaining balance of such proceeds in the amount of $20,471.16.

Thereupon the $20,471.16 was deposited in a savings account with the names of both Mrs. Foley and Mr. Smith on the account. As a part of that transaction, the parties entered into a written agreement dated September 23, 1971. Mrs. Foley signed the agreement individually and as personal representative of the late Mr. Foley's estate, and Mr. Smith signed it also. That agreement essentially provided that the $20,471.16 would be kept in a savings account until such time as the parties agreed in writing as to how the funds should be disbursed.

Mrs. Foley and the Smiths were unable to reach agreement as to the disposition of the $20,471.16 being held in the savings account. Mrs. Foley then filed suit against the Smiths on April 13, 1972, asking that she be declared the rightful owner of this money. The Smiths counterclaimed alleging breach of covenant in the deed by which the property had earlier been conveyed to them, and asking damages.

By her reply to the Smiths' counterclaim, Mrs. Foley denied any breach of covenant. She also set up as affirmative defenses that in any event the Smiths had no right to recover for any breach of covenant because the Smiths were not bona fide purchasers of the land, had failed to file a creditor's claim in the probate of Mr. Foley's estate, and had not filed their counterclaim within the 6 years prescribed by the pertinent statute of limitations.

The present case was tried to the court. It resulted in a judgment awarding the entire savings account and accrued interest thereon to the Smiths. Mrs. Foley brings this appeal.

## ISSUES

ISSUE ONE. What is the effect of the failure of the respondents to file a respondents' brief in this court as required by the rules of this court?

ISSUE TWO. Where grantors convey land to grantees by statutory warranty deed, does a subsequent judgment obtained by a third party which divests both the grantors and grantees of their interest in the land constitute a breach of the grantors' covenants to the grantees?

ISSUE THREE. Does knowledge on the part of the grantees of land of an outstanding potentially superior claim to the land so conveyed of and by itself defeat the grantees' right to recover for the breach of a covenant of warranty?

ISSUE FOUR. When does the statute of limitations commence to run on an action for breach of covenants of warranty and of quiet enjoyment when title litigation is pending?

ISSUE FIVE. In the event that a breach of covenant claim arises after the death of one of the grantors and is determined in an action to which his personal representative is a party, must a claim be filed against the decedent's estate?

ISSUE SIX. Are interest on the moneys paid by grantees for property conveyed to them, and the attorneys' fees incurred by the grantees in unsuccessfully defending their title to such property, allowable items of damage in the grantees' action against the grantors for breach of the covenants of warranty and quiet enjoyment?

## DECISION

ISSUE ONE.

CONCLUSION. When a respondent fails to submit a brief in the Court of Appeals, the court will limit its review to determining whether the appellant has made a prima facie case of error and, if so, will grant the appropriate relief.

█ This is another in a growing number of cases wherein the respondents who prevail below fail to file a respondents' brief in this court as required by the rules. CAROA 41(1). Additionally, the trial brief furnished by

respondents for the assistance of the trial judge was not brought up to this court as a part of the record in this case.

The rule in such situations is that this court will limit its review to determining if appellant has made out a prima facie case for error and if appellant has, will reverse and determine the nature of the remand. *Aquarian Foundation v. KTVW, Inc.*, 11 Wn. App. 476, 478, 523 P.2d 969 (1974); *Riley v. Sturdevant*, 12 Wn. App. 808, 811, 532 P.2d 640 (1975).

ISSUE TWO.

CONCLUSION. The decree of specific performance obtained by the prior purchaser of the land was an eviction and constituted a breach of the covenants of warranty and quiet enjoyment in the deed.

The statutory warranty deed, by which the Foleys conveyed the real estate in question to the Smiths, did by force of statute carry with it certain broad covenants. RCW 64.04.030.[1]

As RCW 64.04.030 shows on its face (*see* footnote 1, *supra*), the covenants thereby engrafted into the deed given by the Foleys to the Smiths included the covenants of warranty and of quiet enjoyment.

The covenant of warranty is usually considered the principal covenant of a deed. It is an assurance or guaranty of title, or an agreement or assurance by the grantor that the grantee and the grantee's heirs and assigns shall enjoy it without interruption by virtue of paramount title, and

---

[1]"Every deed in substance in the above [statutory warranty deed] form, when otherwise duly executed, shall be deemed and held a conveyance in fee simple to the grantee, his heirs and assigns, with covenants on the part of the grantor: (1) That at the time of the making and delivery of such deed he was lawfully seized of an indefeasible estate in fee simple, in and to the premises therein described, and had good right and full power to convey the same; (2) that the same were then free from all encumbrances; and (3) that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same, and such covenants shall be obligatory upon any grantor, his heirs and personal representatives, as fully and with like effect as if written at full length in such deed." RCW 64.04.030.

that they shall not, by force of a paramount title, be evicted from the land or deprived of its possession. 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 50 (1965); 21 C.J.S. *Covenants* § 47 (1940).

The obligation on the Foleys as the covenantors was that they would defend and protect the Smiths as covenantees against the rightful claims of all persons thereafter asserted. *West Coast Mfg. & Inv. Co. v. West Coast Improvement Co.*, 25 Wash. 627, 637, 66 P. 97 (1901); *McDonald v. Ward*, 99 Wash. 354, 358, 169 P. 851 (1918); 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 50 (1965); 21 C.J.S. *Covenants* § 47 (1940); W. Burby, *Real Property* 315 (3d ed. 1965).

In the respects stated above, a covenant for warranty and a covenant for quiet enjoyment are substantially the same, and the same basic rules governing breach and damages generally apply to both. *West Coast Mfg. & Inv. Co. v. West Coast Improvement Co., supra* at 643; 20 Am. Jur. 2d, *supra*; W. Burby, *Real Property* 317 (3d ed. 1965); 6 R. Powell, *The Law of Real Property* ¶ 909, at 268.28 (P. Rohan ed. 1974).

■ A covenant of warranty is broken only by an actual or constructive eviction under a paramount title existing at the time of the conveyance. *West Coast Mfg. & Inv. Co. v. West Coast Improvement Co., supra* at 643; 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 54 (1965); 21 C.J.S. *Covenants* § 110(a) (1940). The same is true of a covenant of quiet enjoyment. 20 Am. Jur. 2d, *supra*, § 98; 21 C.J.S., *supra*, § 108(a); 7 G. Thompson, *Commentaries on the Modern Law of Real Property* § 3198, at 360 (1962).

What constitutes actual or constructive eviction can vary according to the circumstances of the eviction, who is in possession and who has actual title. *West Coast Mfg. & Inv. Co. v. West Coast Improvement Co.*, 25 Wash. 627, 66 P. 97 (1901); *Black v. Barto*, 65 Wash. 502, 118 P. 623 (1911); *Hoyt v. Rothe*, 95 Wash. 369, 163 P. 925 (1917); *Whatcom Timber Co. v. Wright*, 102 Wash. 566, 173 P. 724 (1918).

In the present case, either the grantor or grantee was in

possession at all times and the third party was not. It is thus clear the eviction occurred here when the prior purchaser obtained the decree of specific performance divesting the Foleys and the Smiths of their interest in the land, and that such eviction breached the Foleys' covenants of warranty and quiet title to the Smiths. *McDonald v. Ward, supra*; 21 C.J.S., *supra*, § 112(b)(6); Annot., 172 A.L.R. 18 (1948).

ISSUE THREE.

CONCLUSION. Knowledge on the part of the grantees of an outstanding potentially superior claim to the land to which they obtained a deed does not bar their claim for breaches of the covenants of warranty and quiet enjoyment in their deed when they are later evicted from the property by judicial action.

Mrs. Foley cites us to the prior litigation commenced by the prior purchaser wherein it was held that as to the prior purchaser "[t]he Smiths were not bona fide purchasers for value." *Hudesman v. Foley*, 4 Wn. App. 230, 233, 480 P.2d 534 (1971). She argues this as res judicata in the present case and as establishing that the trial court erred in concluding that the Smiths could still be bona fide purchasers as to the Foleys in the present case.

■ Whether or not the Smiths were bona fide purchasers for value when they obtained the deed from the Foleys is not determinative of the present case. The fact that the Smiths, as grantees under the deed, had knowledge at the time of the execution of the conveyance of an allegedly outstanding superior claim of title, does not bar their right to recover for breaches of the covenant arising from their subsequent eviction. *Fagan v. Walters*, 115 Wash. 454, 457, 197 P. 635 (1921); 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 54 (1965); 21 C.J.S. *Covenants* § 38 (1940).

Such covenants warrant against known as well as unknown defects, and grantees with knowledge of an encumbrance have the right to rely on the covenants in the deed for their protection. *Fagan v. Walters, supra*. The purpose

of the covenant is protection against defects, and to hold that grantees can be protected only against unknown defects would rob the covenant of much of its value and destroy the force of its language. *Williams v. Hewitt*, 57 Wash. 62, 65, 106 P. 496 (1910).

ISSUE FOUR.

CONCLUSION. The 6-year statute of limitations on the covenants of warranty and quiet enjoyment in a deed did not commence to run until the specific performance decree evicting the covenantors and covenantees had become final.

 Mrs. Foley argues that the statute of limitations on any breaches of the covenants in the deed had run well prior to the time that the Smiths filed their counterclaim for breach of covenant, and that therefore the Smiths' counterclaim is barred.

Some covenants in deeds are deemed to operate in the present and to be breached, if at all, when made, while others are prospective in operation and are not breached until an eviction or its equivalent. 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 114 (1965); 21 C.J.S. *Covenants* § 95 (1940).

As expressed above, the covenants of warranty and of quiet enjoyment were not broken in the present case until the eviction by the decree of specific performance. Accordingly, the statute of limitations on the Smiths' claim for breaches of those covenants did not commence running until they, as covenantees, were evicted or ousted, either actually or constructively from the premises conveyed. *West Coast Mfg. & Inv. Co. v. West Coast Improvement Co., supra* at 643; *McDonald v. Ward*, 99 Wash. 354, 169 P. 851 (1918); 20 Am. Jur. 2d, *supra,* § 115; 21 C.J.S., *supra,* § 122.

The pertinent rule is stated in 95 A.L.R.2d 913, at 931 (1964):

> Where litigation is pending which will be determinative of the title to the premises conveyed as between the covenantee and the third persons claiming paramount title, an eviction such as will commence the running of

limitations on the covenantee's action for breach of warranty is not ordinarily held to have occurred until the final decree in such litigation is entered against the covenantee.

The counterclaim by the Smiths was brought well within 6 years of the decree in the specific performance action becoming final. It was, therefore, not barred by RCW 4.16.040.

ISSUE FIVE.

CONCLUSION. It is unnecessary to file a creditor's claim with an estate where the claim did not arise until after the death of the intestate.

Mrs. Foley's position throughout has been that the filing of a claim in her late husband's estate was required and that no claim having been filed by the Smiths, their counterclaim is barred by RCW 11.40.010, the nonclaim statute.

Mr. Foley passed away during the pendency of the specific performance action brought against the Foleys and the Smiths by the prior purchaser. The decree in that case was introduced into evidence in the present case. It shows that Mrs. Foley had continued in the case both individually and in her capacity as personal representative of Mr. Foley's estate and that the specific performance decree awarded the prior purchaser was against her both individually and in her capacity as personal representative.

The third party who had brought the suit was not required to file a claim against the estate because an action for specific performance is not within the purview of RCW 11.40.010, the nonclaim statute. *Baird v. Knutzen,* 49 Wn.2d 308, 310, 301 P.2d 375 (1956).

■ When the specific performance decree was entered on December 20, 1971, well after Mr. Foley's death, it was entered against Mr. Foley's *estate* as well as against Mrs. Foley. It was not entered against Mr. Foley, the *deceased.* As held herein, the breaches of the covenants of warranty and quiet enjoyment did not take place until the specific performance decree became final. That decree which breached the covenants of warranty being against the *es-*

*tate* rather than against the *deceased*, no claim was required to be filed. It is unnecessary to present a claim that does not arise until after the death of the testator or intestate. *In re Estate of MacDonald*, 29 Wash. 422, 434, 69 P. 1111 (1902); *Drain v. Stough*, 61 F.2d 668, 669 (9th Cir. 1932), 87 A.L.R. 490; J. Steincipher, *Washington Probate Practice & Procedure* 245 (1966); 31 Am. Jur. 2d *Executors and Administrators* § 277 (1967); Annot., 34 A.L.R. 362, 371 (1925).

ISSUE SIX.

CONCLUSION. Interest and attorneys' fees are allowable items of damage for breach of the covenants of warranty and quiet enjoyment.

After the third party finally established his title to the land, Mrs. Foley voluntarily transferred back to the Smiths the $41,714.24 which the Smiths had previously paid down on the sales price of the property. Mrs. Foley's position is that since that is all of the purchase price that was paid by the Smiths, that is all they are entitled to recover.

The trial court entered findings of fact to the effect that the costs and attorneys' fees reasonably expended by the Smiths in defense of the prior purchaser's action, and the interest on the money they had paid down on the property during the years that the Foleys had the use of their money, far exceeded the remaining moneys here in controversy. Although that finding is challenged on this appeal, there is substantial evidence in the record to support it. Therefore, it must be taken as a verity on this appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Jackson v. Pennington*, 11 Wn. App. 638, 646, 525 P.2d 822 (1974).

The remaining issue then is whether the items of damage allowed by the trial court are in law proper items of damage for the breach of the covenants here involved.

It is true that as a broad general rule, the measure of damages for a total breach of a covenant of warranty is the consideration paid, or the value of the land as measured by the purchase price. 20 Am. Jur. 2d *Covenants, Condi-*

*tions, and Restrictions* § 133 (1965); 21 C.J.S. *Covenants* § 148(a) (1940); Annot., 61 A.L.R. 10, 79 (1929).

In addition, however, interest on the consideration paid on the land for which title failed is an allowable element of damages in a suit by covenantees for breach of covenants of warranty and quiet enjoyment. 20 Am. Jur. 2d, *supra*, § 148; 21 C.J.S., *supra*, § 149; W. Burby, *Real Property* 318 (3d ed. 1965); 7 G. Thompson, *Commentaries on the Modern Law of Real Property* § 3204, at 381 (1962); Annot., 61 A.L.R. 10, 174 (1929); Annot., 100 A.L.R. 1194, 1204 (1936).

Reasonable attorneys' fees expended by covenantees in good faith to defend their title are likewise recoverable as damages. 20 Am. Jur. 2d, *supra*, § 152; 21 C.J.S., *supra*, § 150(b); 7 G. Thompson, *Commentaries on the Modern Law of Real Property, supra*; Annot., 61 A.L.R. 10, 161 (1929); Annot., 100 A.L.R. 1194, 1203 (1936).

Mrs. Foley, as appellant, did not make out a prima facie case of error.

Judgment affirmed.

WILLIAMS, C.J., and CALLOW, J., concur.