[No. 3019-1.    Division One.    February 17, 1976.]

*In the Matter of the Marriage of* VAL J. FORSYTH, *Appellant, and* O. FREDERICK FORSYTH, *Respondent.*

*Mueller & Chapman* and *Henry S. Chapman*, for appellant.

JAMES, J.—Petitioner, Val J. Forsyth, commenced this action by a Petition for Custody Modification Hearing. Re-

spondent, Frederick Forsyth, appeared specially and moved to dismiss. The issue on appeal is whether the Superior Court for Snohomish County should have assumed jurisdiction "to determine the matter of custody of the minor children [of the parties] and the related problems regarding child support, alimony, and visitation." The matter was submitted to the trial judge upon the affidavits, exhibits, and memorandums of authorities which have been made a part of the record on appeal. The trial judge found that the same issues were pending in a proceeding in California; that the California court had personal jurisdiction over the parties; and that Val Forsyth, petitioner here, was in contempt of the California court for failure to comply with that court's process. The trial judge concluded that he should not assume jurisdiction. We agree.

The relevant facts are: The California Superior Court awarded custody of the two minor children of the parties to the mother, Val, by an interlocutory judgment of dissolution of marriage on January 13, 1972. The father, Frederick, was granted reasonable rights of visitation. The interlocutory judgment was confirmed by a final judgment on April 7, 1972. The marriage dissolution action had been instituted by Val on September 17, 1971. Difficulties in the exercise of Frederick's visitation rights commenced with the filing of the action and have continued until the present time. The parties have, on a number of occasions, sought the intervention of the California court in their efforts to resolve their differences.

An order entered on September 4, 1973, authorized Val to take the children from California for periods of 10 days or less but provided that "[i]n no event shall the mother be entitled to take the children out of the State of California for a period longer than thirty (30) days, except upon the written consent of the father, or as a result of the approval of this court by court order." In November 1973, Val obtained Frederick's written permission to bring the children to Edmonds, Washington to spend their Christmas vacation with their maternal grandparents.

On December 3, 1973, Frederick secured an order to show cause which required Val's appearance on December 27, 1973, for a hearing regarding visitation problems. A California attorney made a general appearance for Val on December 27 and by agreement the matter was continued to January 17, 1974. On January 17, 1974, new counsel appeared for Val and the matter was continued to February 5, 1974. On that date, the matter was again continued. On February 21, 1974, the matter was heard and the court entered its "Order After Order to Show Cause" in which it is recited that:

> The court finds and determines that it has jurisdiction over VAL J. FORSYTH in that she was personally served with an order to show cause in Santa Clara County prior to her departure from the State of California and that she was properly served in the State of Washington with an additional order to show cause.

By this order, temporary custody of the children is awarded to Frederick and Val is found to be in contempt of court "for having remained out of the State of California with the minor children of the parties for a period in excess of thirty (30) days."

Frederick's assertion that Val was personally served in California prior to her departure for Edmonds is supported by an affidavit of a process server and by an affidavit of Jocelyn Gross, a member of the California bar, who states that

> as a representative of the law firm TREPEL, GINGERICH & Hoss, [she] appeared in the above-entitled action on December 27, 1973, at which time she registered herself as attorney of record for the petitioner, VAL J. FORSYTH, and made a general appearance before the court at the time of an order to show cause hearing scheduled for December 27, 1973.
>
> At the time of her appearance in court she stated to the court that she was appearing generally and submitted the petitioner, VAL J. FORSYTH, to the jurisdiction of the court and upon making that general appearance, counsel for the petitioner and counsel for the respondent agreed that the matter might be continued over until a later date for hearing.

Val's response is that she was residing with her parents in Edmonds on the day of the alleged personal service in California and that she

> never had any contacts with Attorney Joceon [sic] Gross. That petitioner never authorized Attorney Gross to make a general appearance, as indicated by copy of Attorney Gross's affidavit of general appearance on file herein.

Val does not deny that she was personally served in Washington, nor does she assert that she did not authorize the law firm which employs attorney Gross to appear for her.

■ We first confront a threshold problem occasioned by Frederick's failure to file a brief on appeal. CAROA 41(3) provides in part that "[i]f the respondent files no brief, the cause will be deemed submitted upon its merits as to him." We have, therefore, considered Val's brief on appeal and have reviewed the record considered by the trial judge to determine whether Val has presented a prima facie showing requiring reversal. *Aquarian Foundation v. KTVW, Inc.*, 11 Wn. App. 476, 523 P.2d 969 (1974). Our review has persuaded us that the trial court should be affirmed.

In his oral summary, the trial judge said:

> I have no dispute with the proposition that the court should consider the welfare of the children when the matter is brought before the court, but I do feel that this court is correct, and it is proper, that it do [sic] not accept jurisdiction over a matter that involved the identical issue in which the Court of a sister state has found the petitioner to be in contempt. This is the fact situation where the petitioner was unhappy with the result of any ruling of this court concerning the custody, and visitation, then she moves on to another state, and we find her leaving that state, and eventually winds up in every Superior Court having jurisdiction over the matter in every State of the Union. Certainly, her remedy is clear. She seeks to have this court assume jurisdiction. Then she should go to California or purge herself of the contempt in California. Further, there is no showing that the Court in California is not in as good a position at this time to determine the welfare of the children, and the parties apparently resided in California for a number of years,

and it does seem indeed strange that suddenly when she is faced with action in California involving the custody, that she appears in the State of Washington. As I have previously stated at the previous hearings, this court must give full [faith] and credit to an order entered by a court of a sister state where the sister state did have proper jurisdiction over the matter.

Washington follows the general rule that jurisdiction to supervise matters of custody and welfare of a minor child is conferred by the child's domicile within the state. *State ex rel. Marthens v. Superior Court*, 25 Wn.2d 125, 169 P.2d 626 (1946). A child's domicile usually follows that of the parent who has legal custody of the child. *In re Mullins*, 26 Wn.2d 419, 174 P.2d 790 (1946); *Betts v. Betts*, 3 Wn. App. 53, 473 P.2d 403 (1970); Restatement of Conflict of Laws § 32 (1934). Washington also recognizes the rule "that a court originally having cognizance of a custody matter has a continuing jurisdiction to supervise custody." *Nedrow v. Nedrow*, 48 Wn.2d 243, 247, 292 P.2d 872 (1956). It is possible, therefore, that two states may have concurrent jurisdiction "to supervise matters of custody and welfare . . ." *Nedrow v. Nedrow, supra* at 247.

However, in recognition of a "clean hands" doctrine, "it has been held the courts of this state will not assume jurisdiction to examine the merits of a requested permanent custody change if the child is brought into Washington, or retained here, in violation of a valid permanent custody decree of another state." *In re Marriage of Saucido*, 85 Wn.2d 653, 656, 538 P.2d 1219 (1975).

We do not find that Val brought the children to Washington in violation of a valid California permanent custody decree. But the record demonstrates that California has exercised continuing jurisdiction in the matter since September 17, 1971, and that Val is retaining the children here in violation of a valid order of the California court. As is pointed out in *Saucido*, the clean hands doctrine serves to discourage child snatching, forum shopping, and repeated litigation of custody awards when one parent is dissatisfied

or is using a child as a weapon to inflict punishment upon the other parent.

The trial judge properly observed that courts must always consider the welfare of minor children. But we should not presume that Washington judges are more competent than California judges to determine what custodial arrangements would be best for the Forsyth children.[1]

Whether upon the theory of res judicata, the doctrine of comity, or by reason of constitutionally required full faith and credit, we believe that, absent a showing of compelling need, states should refuse to reexamine custody awards of sister states having concurrent jurisdiction.[2]

Val's showing to the trial court demonstrated no compelling reason why the Snohomish County Superior Court should accept jurisdiction to resolve a custodial dispute pending in California.

Affirmed.

WILLIAMS, C.J., and ANDERSEN, J., concur.

---

[1] *Compare Uniform Child Custody Jurisdiction Act* Annot., 9 U.L.A. § 7 (1973).

[2] For a comprehensive treatment of conflict of laws problems in child custody matters, see Annot., 35 A.L.R.3d 520 (1971).