[No. 8654–9–II.   Division Two.   May 5, 1987.]

THE STATE OF WASHINGTON, *Appellant,* v. LEONARD
A. STEPHANS, *Respondent.*

*David H. Bruneau, Prosecuting Attorney,* and *Debra Conklin–Taylor, Deputy,* for appellant.

*Karen L. Unger* of *Clallam–Jefferson County Public Defender Association,* for respondent.

WORSWICK, J.—The State appeals dismissal of statutory rape and indecent liberties charges against Leonard A. Stephans "in the furtherance of justice" pursuant to CrR 8.3(b). We affirm.

Stephans was arrested in early October 1984, after the charges were filed initially in district court. Throughout all of the ensuing proceedings, which terminated with the dismissal order entered on April 8, 1985, he remained in jail because of a probation hold from another county. The probation hold was placed on Stephans only because of these charges.

It became apparent early on that both sides were headed for difficulty in preparing for trial. The child victims were in Alaska throughout much of the time, as were several potential witnesses, and the children's custodians, the potential witnesses, and the Alaska authorities all were uncooperative. Notwithstanding those difficulties, however, the legal foundation for the ultimate dismissal was laid when the court entered an omnibus order on November 30, 1984, and when it entered an order on February 8, 1985, appointing an expert to assist the defense.

The omnibus order specifically required the State, on or before January 15, 1985, to serve and file a witness list, to provide defense counsel with the names, addresses, qualifications and subject of testimony of any expert witnesses the State planned to use at trial, and to supply reports obtained by the State of any physical or mental examinations. The State did not object to any part of the order and, in fact, suggested the due date. The State did not comply by the due date, and we are unable to tell from the record whether and to what extent it ever complied. As late as March 29, 1985, it had not yet supplied a witness list.

On February 8, 1985, the defense moved for appointment of an expert to evaluate the children and to assist in the defense. Because of the later acts of the State, its response to the motion is significant:

THE COURT: I'd like to hear from the prosecution, if they have any objection to it and what their basis would be.

Ms. CONKLIN–TAYLOR: *I think that the defense is entitled to have some expert examine the victims in this case and do an interview.* I think that the children are

entitled to have someone they trust with them. Their parents or whoever is available for that.[1]

(Italics ours.)

From this point on, the difficulties accelerated. Seven more hearings on discovery matters were conducted, and Stephans, although in jail the whole time, twice waived a speedy trial because defense counsel, lacking information from the State, was unable to prepare a defense. During these hearings, the trial court referred at least nine times to its order for examination of the victims, and repeatedly announced its intention to dismiss the charges unless the order was complied with.

Although the State's position was that it had no better witness cooperation than did the defense, and had no obligation to produce witnesses for the defense, it is clear from the record that the State at least had access to the victims, whereas the defense did not. It is also clear—and significant—that the victims' custodians sought advice from the State concerning the order for examination, and that the State gave egregiously bad advice.[2]

---

[1]At oral argument before this court, counsel for the State represented that no *written* order for such an examination had ever been entered. This was disingenuous, to say the least. The colloquy during the hearing plainly shows that all concerned knew that the court was ordering an examination of the victims by the defense expert. Moreover, the order signed by the court states on its face that the fee to be paid was for "preparation of an assessment of the three children . . ."

[2]At a hearing on March 29, 1985, counsel for the State revealed that when one of the custodians questioned the order for examination, she (counsel) "had to admit that I don't know of any authority for this court to order an evaluation by another doctor." Counsel for the State then, without citation of authority, attempted to challenge the order she had previously agreed to. This challenge, equally unsupported, was again asserted by the State at hearings on April 2 and April 5, 1985. Then, on April 5, counsel for the State made the following astonishing statement:

Ms. CONKLIN-TAYLOR: . . . [A]fter consulting with the Prosecutor, Mr. Bruneau, we told both sets of parents that we didn't know of any authority for the court to order these evaluations, that Ms. Unger had not presented the court with any authority saying the court had the power to order these evaluations and that if they wanted to protect their children we would do our best to support them in that. . . .

Near the end of this procession of hearings, defense counsel moved to dismiss, contending that the State had generally mismanaged the case and had refused to make discovery as ordered by the court. The court at first denied the motion, but later reconsidered and granted it, stating that the crowning blow was the State's willingness to assist the victims' parents if they refused to get the victims to the court appointed expert.

The dispositive issue is whether the trial court properly exercised its discretion by dismissing the charges under CrR 8.3(b).[3] We hold that it did.

CrR 8.3(b) permits a court to dismiss a criminal prosecution on its own motion "in the furtherance of justice." Its power is discretionary and is reviewable for manifest abuse. *State v. Laureano,* 101 Wn.2d 745, 682 P.2d 889 (1984). Discretion is not unlimited. *State v. Whitney,* 96 Wn.2d 578, 637 P.2d 956 (1981); *State v. Boldt,* 40 Wn. App. 798, 800, 700 P.2d 1186 (1985). There must be a showing of some governmental misconduct or arbitrary action materially infringing upon a defendant's right to a fair trial. The purpose of the rule is to ensure that, once an individual has been charged with a crime, he or she is treated fairly. *Whitney,* 96 Wn.2d at 580. As the underlying issue is one of fairness to the defendant, the required governmental misconduct need not be evil, venal or dishonest; simple mismanagement is sufficient. *State v. Dailey,* 93 Wn.2d 454, 610 P.2d 357 (1980). Dismissal, however, is an extraordinary remedy, appropriate only when there has been such prejudice to the defendant's right to a fair trial that the matter could not otherwise be remedied. *Laureano,* 101

---

[3]The State specifically challenges certain findings of fact, and also now attempts to challenge the order for evaluation. We need not discuss the findings as we are satisfied that the facts we consider relevant to the issue are adequately supported by the record. We will not entertain the challenge to the evaluation order, inasmuch as the State agreed to the order (and thus invited any error it now claims; *see State v. Craig,* 82 Wn.2d 777, 514 P.2d 151 (1973); *State v. Manthie,* 39 Wn. App. 815, 696 P.2d 33, *review denied,* 103 Wn.2d 1042 (1985)), and the basis for that challenge here was never presented to the trial court. RAP 2.5(a).

Wn.2d at 762–63; *Whitney,* 96 Wn.2d at 580; *State v. Baker,* 78 Wn.2d 327, 474 P.2d 254 (1970).

We find in this case misconduct sufficient to justify the dismissal.

There is no doubt that difficulty and confusion attended the efforts by both sides to prepare for trial. At some point, however, confusion and difficulty will not suffice to excuse noncompliance with court orders. It is the State, after all, that filed the charges and must present a case. The defendant cannot prepare a defense without knowing what the State's case will be, and cannot know that without at least being formally advised as to the State's witnesses. *See* CrR 4.7(a)(1)(i); *Dailey,* 93 Wn.2d at 456–58. The State's failure to supply a formal witness list was symptomatic of the State's poor management of this case. Even so, we would be inclined to hold that dismissal was too drastic a remedy but for the State's conduct concerning the court's order for evaluation of the child witnesses.

We cannot characterize the State's actions concerning that order as other than egregious misconduct. The State's advice to the children's custodians cannot be interpreted as other than encouragement to disobey a court order. The effect was to frustrate the defense in its attempt to evaluate the credibility of the victims.[4]

We do not say that a prosecuting attorney—or any lawyer, for that matter—is barred from discussing a court order with a potential witness. We would hope that any such discussion would be conducted on a professional basis, and that it would be well seasoned with common sense. We do say that under no circumstances may a prosecuting attorney counsel, or suggest his approval of, disobedience. It should not be necessary to point out that the proper avenue to vindicate a disagreement with an order is an

---

[4]If the State is unaware of authority supporting the order, its attention is directed to *State v. Demos,* 94 Wn.2d 733, 619 P.2d 968 (1980), and cases cited therein.

appeal.[5] Finally, we see no remedy that would have served the interests of justice short of dismissal. The trial court had already warned counsel that disobedience of the order would result in dismissal and, at the time the dismissal was granted, Stephans had been in jail, only because of these charges, for about 6 months, but the case was no nearer to trial than it had been at the start. In fact, it is hard to see from the record when or if it would ever be ready. The trial court recognized this; it properly exercised its discretion under CrR 8.3(b).

Affirmed.

ALEXANDER, A.C.J., and PETRICH, J., concur.

---

[5]The circumstances here are aggravated because the prosecutor not only did not appeal, but agreed to the entry of the order.