[No. 10513-6-II.   Division Two.   June 21, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. LEON WILBURN, *Appellant.*

*Dianna Timm Adams,* for appellant (appointed counsel for appeal).

*C. Danny Clem, Prosecuting Attorney,* and *Irene Cleavenger, Deputy,* for respondent.

WORSWICK, J.—Leon Wilburn raised three assignments of error in this appeal from his conviction of second degree rape. The State filed no brief, and was precluded from offering oral argument by an order entered by our Commissioner. RAP 11.2(2). It is necessary, therefore, that we now consider not only the merits of Wilburn's contentions, but the present state of the law governing an appeal in which the respondent has defaulted.

CAROA 41(3), applicable before July 1, 1976, to appeals before this court, provided, in pertinent part:

> If the respondent files no brief, the cause will be deemed submitted upon its merits as to him.

In *Aquarian Found. v. KTVW, Inc.,* 11 Wn. App. 476, 523 P.2d 969 (1974), Division One interpreted the rule to mean that, absent a respondent's brief, appellate review was limited to examining the appellant's brief to determine if its assignments of error present a prima facie showing of error. Later cases firmly established and elaborated upon this holding. *See Stigall v. Courtesy–Chevrolet–Pontiac, Inc.,* 15 Wn. App. 739, 551 P.2d 763 (1976); *In re Marriage of Forsyth,* 14 Wn. App. 909, 546 P.2d 117 (1976); *Foley v. Smith,* 14 Wn. App. 285, 539 P.2d 874 (1975); *Martin v. Schoonover,* 13 Wn. App. 48, 51, 533 P.2d 438 (1975) (a respondent choosing not to file a brief does so at his peril).

The CAROA 41(3) language no longer appears in the rules. The pertinent rules now are RAP 10.1(b), 10.2(b) and (c), 1.2(b), and 11.2(a).

RAP 10.1(b) provides:

> **(b) Briefs Which May Be Filed in Any Review.** The following briefs *may* be filed in any review: (1) a brief of appellant or petitioner, (2) a brief of respondent, and (3) a reply brief of appellant or petitioner.

(Italics ours.) The permissive "may" is only significant in connection with RAP 10.1(h), which makes it clear that no other briefs are to be filed without special permission of the

court; *i.e.,* the briefs identified in RAP 10.1(b) are those the court *expects.*

RAP 10.2(c)[1] provides:

> **Brief of Respondent in Criminal Case.** The brief of a respondent in a criminal case *should* be filed with the appellate court within 60 days after service of the brief of appellant or petitioner or, if a defendant files a pro se supplemental brief, within 30 days after service of the pro se supplemental brief.

(Italics ours.)

RAP 1.2(b) provides, in part:

> **Words of Command.** Unless the context of the rule indicates otherwise: *"Should" is used when referring to an act a party or counsel for a party is under an obligation to perform.* The court will ordinarily impose sanctions if the act is not done within the time or in the manner specified. . . .

(Italics ours.) It is apparent that, under the present rules, a respondent is *obligated* to file a brief, and that monetary sanctions may be imposed for failure to do so (*see* RAP 18.9).

RAP 11.2(a) provides:

> **Party.** A party of record may present oral argument *only if the party has filed a brief.*

(Italics ours.) Although this language differs from CAROA 41(3), the import is the same, for it is obvious that one who submits neither brief nor argument "leaves an appellate court with but one side of the picture presented and the issues out of focus." *Martin,* 13 Wn. App. at 51.

We conclude that under the present rules (1) a respondent is obligated to submit a brief, and that coercive monetary sanctions may be employed to effect compliance, but (2) if a respondent does not file a brief, the prima facie error rule, first announced in *Aquarian Found. v. KTVW, Inc., supra,* continues in force. *Accord, Hobart Corp. v. North Cent. Credit Servs.,* 29 Wn. App. 302, 628 P.2d 842 (1981). Because we already have invoked only RAP 11.2(a)

---

[1] RAP 10.2(b) applies to civil cases.

in this case, and do not wish to delay a decision, we will apply the prima facie error rule to our consideration of Wilburn's contentions. We reverse and remand for a new trial, holding that Wilburn's brief, considered in light of the record, shows prima facie reversible error as to one issue.

Although many witnesses testified, the facts relevant to our review can be stated briefly. The alleged victim, a Seattle woman, met and drank with Wilburn twice at a Seattle tavern. After the second encounter, she went with him to his beach cabin in Kitsap County. Because the ferries had stopped running, they drove all the way. She testified that Wilburn forcibly raped her there. Wilburn testified essentially that, following a sociable sojourn at the cabin, he decided to go to bed. He said that he was intoxicated, and remembered nothing from then until he was awakened by the police. He admitted that the woman might have gotten into bed with him, but contended that sexual intercourse, if any occurred, was consensual.

Wilburn first assigns error to the State's failure to produce the Cen–Com tapes of the victim's 911 phone call and, second, to the State's alleged misrepresentations concerning lab tests results. The tapes were destroyed 2 days after the prosecutor said that she would produce them voluntarily. No lab tests were done, although the prosecutor represented that tests were being done and the results would be supplied to the defense.

Although the State's handling of the these matters was symptomatic of its casual management of the case (*see State v. Stephans*, 47 Wn. App. 600, 604, 736 P.2d 302 (1987)), the deficiencies complained of were due to inadvertence, and we do not believe that prima facie reversible error has been shown. There was enough evidence of the victim's telephone conversations with her son, and her encounters with the neighbors near the beach cabin and the police, that the Cen–Com tapes, although they may have been helpful, would have contributed little to the defense. Similarly, test results would have added little, as the fact of intercourse was virtually undisputed. Wilburn did not deny

intercourse; his only contention of substance was that, if it occurred, it was consensual. Wilburn has not shown prima facie a reasonable possibility that exculpatory evidence would have been available had the 911 tapes been produced and had he been correctly informed concerning the status of tests. *State v. Campbell,* 103 Wn.2d 1, 18, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094 (1985); *State v. Vaster,* 99 Wn.2d 44, 659 P.2d 528 (1983); *Seattle v. Duncan,* 44 Wn. App. 735, 723 P.2d 1156 (1986).

We do, however, find prima facie reversible error arising out of Wilburn's third contention: that the court should have granted a mistrial after a rebuttal witness testified to a remark Wilburn made during a bail study interview.

Early in the trial, the court ordered in limine that the State would not be permitted to introduce evidence of Wilburn's earlier convictions. The following occurred during the prosecutor's cross examination of Wilburn:

Q. Besides Detective Pendergast, and Detective Magerstaedt, and Detective Abille, *did you talk to anybody else about accusations that had been raised against you?*
A. Not to my knowledge, no.
Q. Did you talk to Lorraine Brooks?
A. About bail, yes, ma'am.
Q. *Did you talk to her about this incident?*
A. *No, ma'am.*
Q. *Did you not admit to Lorraine Brooks that you had committed this act?*
A. No, ma'am.
Q. Did you not admit to Lorraine Brooks that you had a problem and needed help?
A. Not that I recall, no.

(Italics ours.) On rebuttal, the State called Lorraine Brooks, a superior court employee responsible for bail studies. Brooks first testified, in the jury's absence, as follows:

Q. For what reason did you meet with the defendant?
A. It is part of my job to advise him of his rights, to determine if he wanted and qualified for court appointed attorney, and to do what we call a "bail study."

Q. Are you aware when you speak to these individuals what charge has been lodged against them?

A. Yes, that's from a booking sheet that I am given by the jail each morning.

Q. *Did you have occasion to speak with Mr. Wilburn about the charges against him?*

A. *No, I don't discuss the charge.*

Q. Did Mr. Wilburn *indicate anything to you* about the charge against him?

A. Only at one point in the bail study. I made the comment that I was surprized [*sic*] to see that he was back.

Q. Continue?

A. And he said, "*Yes, I did it again, and I need treatment.*"

Q. Was there anything further said?

A. No, we went on to the body of the bail study at that point.

(Italics ours.) In the extensive colloquy that followed, defense counsel objected to the introduction of any part of Brooks's testimony. However, the focus of the discussion had to do with the court's order in limine and the court's attempt to eliminate the word "again" from the testimony.[2] The witness was instructed as to the limits on her testimony. Nevertheless, she repeated before the jury the full version of Wilburn's remark. The court denied a motion for a mistrial. It offered to instruct the jury to disregard "again," but counsel declined.

█ It is perfectly clear from the record that the court and counsel considered the word "again" as a reference to earlier criminal acts or convictions. Inasmuch as the outcome turned largely on the credibility of Wilburn and the victim, and the court had already determined that evidence of prior acts must be excluded, a curative instruction would not have helped. *State v. Escalona*, 49 Wn. App. 251, 742 P.2d 190 (1987). We are satisfied that prima facie reversible

---

[2]The court explicitly ruled, during this colloquy, that evidence of prior acts or convictions would be more prejudicial than probative, and would not be allowed.

error has been shown in the court's failure to grant a mis-trial.[3]

Reversed. New trial granted.

REED, C.J., concurs.

ALEXANDER, J. (dissenting)—I dissent from the majority opinion for two reasons. First, I do not agree that the present rules on appeal should be interpreted to mean that the appellant should prevail in any criminal case where the respondent fails to file a brief and there has been a prima facie showing of error by appellant. In support of that interpretation the majority cites several civil cases in which CAROA 41(3), a predecessor to the current RAP rules, was construed. CAROA 41(3) provided that if a respondent failed to file a brief, the cause is "deemed submitted on its merits as to him." Because the CAROA rules have been replaced by the RAP rules and because the current rules do not contain the language found in CAROA 41(3), the interpretation given to that former rule should not be applied to the present rules.[4]

Even assuming that the current rules on appeal require a respondent to submit a brief, the penalty for failure to do so, in my judgment, is limited. The current rules simply say

---

[3]Although it was not argued in the trial court or here, and we will not, there-fore, consider it as a basis for disposing of the case (RAP 2.5(a)), there is an addi-tional defect in the State's position at trial. Impeachment should have been, but was not, pursued only on the basis of a prior inconsistent statement, not on the basis that Wilburn had admitted "this act." He did not. Brooks testified that she did not discuss the accusation with Wilburn, although the prosecutor's questions on cross examination suggested that she had. The prosecutor did not lay a foun-dation for and confront Wilburn with his exact words, and then allow him to admit, deny or explain them. *See* ER 613(b). In the context of the testimony, it is highly questionable whether Wilburn's remarks can be considered admissible under ER 801(d)(2).

[4]Although the courts in *Hobart Corp. v. North Cent. Credit Servs.*, 29 Wn. App. 302, 303, 628 P.2d 842 (1981) and *Stott v. Cervantes*, 23 Wn. App. 346, 595 P.2d 563 (1979) have applied the prima facie rule subsequent to the adoption of RAP rules, these courts did not discuss the fact that the RAP rules do not contain the same language as CAROA 41(3).

that a respondent "should" file a brief, RAP 10.2(c), and that a party may present oral argument only if the party has filed a brief. RAP 11.2(a). It would seem, therefore, that the penalty for failing to file a brief is the forfeiture of the right to argue. Perhaps, additionally, as the majority suggests, a monetary penalty may be imposed for failure to comply with the rules. RAP 18.9(a).[5] Although it goes without saying that a respondent runs a risk in not filing a brief because the appellate court sees only "one side of the case," that does not mean that the ultimate penalty is that the appellant prevails simply by making a prima facie showing of error.

Our duty as an appellate court should be the same, whether or not the respondent submits a brief or makes oral argument. We must examine the assignments of error, and determine as best we can the merits of the case. While I share the majority's concern about the prosecutor's failure to file a brief, the rule favored by the majority could easily result in an injustice simply because the prosecutor erred.

However, regardless of what the scope of our review is in criminal cases where the respondent fails to file a brief, there is, in my judgment, no basis for reversing the conviction here. Although I recognize that there was error at the trial level, the error was clearly harmless.

As the majority points out, notwithstanding the trial court's efforts to keep error out of the trial, a witness said the word "again" in clear violation of the trial court's order in limine. Arguably, this could have implied to the jury that the defendant had a prior conviction or that he had committed prior bad acts. On the other hand, one could argue that the word "again" is ambiguous and could mean other things. Indeed, defendant's counsel made an offer of proof

---

[5] I see no reason why the court could not now order respondent to file a brief in order to aid us in our determination of the merits of the case.

that the defendant meant something else when he said, "I did it *again*. . . ."[6]

Regardless of how the word "again" was interpreted by the jury, its introduction was harmless error when one looks at the entire trial record. Evidence of other crimes, even if wrongly admitted, is not error of constitutional magnitude. *State v. Robtoy*, 98 Wn.2d 30, 44, 653 P.2d 284 (1982). Thus, the test is whether the outcome of the trial would have been materially affected had the error not occurred. *Robtoy*, 98 Wn.2d at 44.

Here, the crime victim, Lorraine Taylor, described in substantial detail the acts that Wilburn committed. There was also additional evidence supporting her assertion that she had been raped, such as the existence of bloodstains in the home and the fact that she made excited utterances to various witnesses that were generally consistent with her testimony at trial. Furthermore, Wilburn made the admission "I did it . . . I need treatment." Balanced against this, there is only Wilburn's testimony that he started toward the bedroom on the night in question and that he remembered nothing between that time and when the police awakened him the next morning. The case is not, as the majority suggests, a case which turns on the credibility of Taylor versus Wilburn. Taylor describes a rape at the hands of Wilburn. Wilburn says, in essence, he doesn't recall but suggests that if intercourse took place it was consensual. In light of those facts the verdict was not affected by the error. I would affirm.

Reconsideration denied July 15, 1988.

---

[6]Defense counsel made an offer of proof that the defendant meant he had cheated on his wife again when he stated, "I did it again. . . ."